(February 25, 1988)

■ In the Matter of James P. Commissioner of Social Services of the City of New York, Appellant; April M., Respondent.—Order, Family Court, Bronx County (Rhoda Cohen, J.), entered August 31, 1987 which found after a fact-finding hearing that James P. is a "neglected child" and ordered after a dispositional hearing that, *inter alia,* James P. be placed with the Commissioner of Social Services for a period of three months and respondent mother be referred for certain counseling, unanimously reversed, on the law and the facts and as an exercise of discretion, a finding made that James P. is an "abused child", and the matter remanded to the Family Court for a new dispositional hearing before a different Judge, without costs.

Respondent was the mother of two boys, James and Christopher. On September 11, 1986, when James was 5 years old and Christopher 19 months old, Christopher was admitted to Our Lady of Mercy Hospital with second and third degree burns on his legs, feet, chest, abdomen and arms from the elbows down. The following day Christopher died from his injuries. According to the mother, she left the two children in a bathtub with running water, the water turned scalding hot, and Christopher accidentally fell face down in the water. According to the medical authorities, the mother's explanation was inconsistent with the configuration of the injuries. The Commissioner of Social Services therefore filed a petition pursuant to chapter 10 of the Family Court Act seeking an order finding that the surviving child, James, was an abused child, or, in the alternative, a neglected child. Fact-finding hearings were held before Family Court Judge Cohen.

At these hearings two doctors testified, Dr. Rea Herrera, who treated Christopher while he was still alive, and Dr. Daniel Kessler, an expert in child abuse and burn cases who reviewed the medical records. Both testified that Christopher sustained second and third degree burns over 60 to 65% of his body, and that, additionally, he had drowned, based on the presence of fluid in his lungs and the grossly red color of his urine.

The burns covered the front of Christopher's body from the middle of his chest down, and also the front and back of his

legs. His face and his back were spared, as well as small areas behind the knees. The doctors concluded that the burns resulted from a few seconds' immersion in scalding hot water. From the configuration of the areas of the burns, the doctors determined that Christopher had been immersed in scalding water chest down, with his knees flexed, arms outstretched, and his head held up out of the water. Both concluded that the only inescapable explanation for the injuries was that an adult had placed Christopher in scalding water.

Both doctors also testified that the sparing of Christopher's face, and the absence of swelling in his throat, indicated that he had drowned in temperate, rather than hot water. They concluded that the drowning occurred at a later, separate time than the scalding, possibly in a second body of water.

Based on their examination of the medical evidence, the doctors ruled out other possible explanations for the injuries. They opined that the burns could not have been caused by scalding water hitting Christopher from the faucet, nor by his being in a tub of mild water that suddenly turned hot. They also concluded that based on the position of the burns, Christopher could not have accidentally assumed the position, nor could his five-year-old brother James have the strength to immerse Christopher and then pull him out again. The only possibility presented by the medical evidence was the presence of an adult "outside agent".

The relevant law holds that proof of injuries sustained by a child which would ordinarily not be sustained or exist except by reasons of the acts or omissions of the parent shall be prima facie evidence of child abuse or neglect (Family Ct Act § 1046 [a] [ii]), and that proof of the abuse or neglect of one child is admissible on the issue of abuse or neglect of a sibling (Family Ct Act § 1046 [a] [i]; see also, Matter of Cruz, 121 AD2d 901). Once the petitioner's prima facie showing is made, the burden shifts to the parent to offer a satisfactory explanation to rebut the evidence of abuse. (E.g., Matter of Sharnetta N., 120 AD2d 276, 280-281.)

Here, this medical evidence established a prima facie case, and the mother failed to meet the burden to rebut it. First, she offered no medical evidence to rebut the testimony of the doctors. The only evidence she did offer was her own explanation for the incident. She testified that on the day in question she put both children in the tub between 1:00 and 2:00 P.M. She started the cool water, left the drain unstopped, and put toys in the bathtub for the children to play with while she did

housework in another room. Later, she went to her downstairs neighbor to borrow a mop and stopped to chat for 5 or 10 minutes. James came running downstairs and said that Christopher was asleep in the water. When she returned to her apartment, she found Christopher chest down in the water, which was not hot, and the toys had stopped the drain. She stated that she had had previous problems with the bathtub water alternating between hot and cold. The neighbor testified at a later hearing date and corroborated those parts of this story which involved her.

However, both on cross-examination and in testimony from social workers she had spoken to at the time, the mother's story fluctuated wildly. She told Ms. Asendrio and Mr. Gonzalez, the investigating social workers, that she had been in her kitchen, and not downstairs, when the incident occurred. She admitted that at the time she told James to say that she was in the kitchen and not downstairs. She also told James not to mentioned anything to her estranged husband about Christopher being scalded in hot water.

Also most disturbing is the fact that in the course of her testimony, she tried to place the blame for this searing tragedy on five-year-old James, saying that James told her at one point that the running water became hot and James tried to make it cooler, but that James "didn't know which knob was cool and made it hotter". Her obvious unconcern with the future psychological implications of this attempted imposition of "guilt for a brother's death" on a five year old is a further demonstration of conduct detrimental to that child's well-being.

Surprisingly, in light of all of this evidence, the Family Court Judge entered a finding of neglect, and not abuse, and placed James with the petitioner for a period of only three months. The Judge based her decision on the finding, puzzling in light of the unrefuted medical evidence and the inconsistencies in the mother's stories, that the mother's testimony was credible and all of the other evidence "mere speculation".

In the dispositional order, the court properly framed the issue as "whether James can safely be returned to his mother at this time". The court found that the mother's conduct in leaving these two children alone in the tub "constituted gross negligence" and that she needs "counseling in parenting skills to avoid further severe judgment lapses". Nevertheless, the court placed James with Social Services for only a three-month period.

A finding of the serious charge of abuse is manifest under the circumstances presented by the evidence in this case and we make such finding. The detailed recitation of the gruesome facts of this tragic incident compel a determination that the respondent should be kept away from James for a substantial period of time. The Family Court Act clearly defines an "abused child" as a child in danger of serious physical injury. (Family Ct Act § 1012 [e] [ii].) As stated in the Practice Commentary, when there is a finding that one child is abused, as Christopher certainly was here, experience shows that there is a substantial risk of future abuse to the other children. (Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1012, at 232-333.) Where the conduct which formed the basis for a finding of abuse as to one child is so proximate in time to the derivative proceeding that it can reasonably be concluded that the condition still exists, a finding of abuse should be made as to the surviving child (*Matter of Cruz*, 121 AD2d 901, *supra*). Here, there is uncontroverted, unrebutted, and inescapable evidence that Christopher perished by human hands. Under the Family Court's mandate to protect endangered children, the more serious finding of abuse should have been made, and it is clear that James should be placed in a safer environment for a sufficient period until such time as respondent exhibits better judgment and parenting skills so as to prevent the risk of future injury to James. The psychological witnesses at the dispositional hearing were unanimous in their recommendation for a rigorous dispositional order, including a thorough regimen of therapy which the mother should be required to attend. The lenient order entered by the Family Court does not meet this necessary standard.

Accordingly, we remand the matter for a new dispositional hearing, to be held before a different Family Court Judge. *(See, Matter of Valerie Leonice T.,* 107 AD2d 327.) Concur—Murphy, P. J., Sullivan, Kassal, Ellerin and Smith, JJ.