OPINION OF THE COURT
Damian J. Amodeo, J.
In these child protective proceedings it is alleged that respondent sexually abused his stepdaughter, Moria I., and neglected his son, John S. Throughout the matter petitioner has been represented by the office of the County Attorney, respondent by a court-appointed attorney and the children by a Law Guardian. At the fact-finding hearing petitioner called Moria I., the alleged victim of the sexual contact, and Beth Brushcini, a case manager II with the Department of Social Services. In addition to testifying in his own defense, respondent called his religious advisor, Jaleel Shakir, and his mother, Geneva S. The court has also considered memoranda received from counsel for the parties.
FINDINGS OF FACT
Based upon the testimony and demeanor of the witnesses and other material received, the credible evidence supports the following findings of fact:
Moria L, respondent’s stepdaughter, was born on February 1, 1977, and is the natural child of Teresa S. and Gary I., whose marriage terminated in divorce. John S. was born on May 12, 1987, the natural child of Teresa S. and her husband, Manuel S., the respondent in this proceeding.
*990 A report of suspected child abuse was received by petitioner on February 5, 1990, alleging that Moria had been sexually abused by respondent. During the investigation which followed, Moria informed Ms. Brushcini that on numerous occasions, from the time she was in third grade until November 1988, respondent requested that she disrobe in front of him, after which he would touch, rub and fondle her private areas. The final incident occurred in November 1988; Moria related that respondent demanded that she disrobe, and while threatening suicide with a gun, intimidated and assaulted the child as she resisted, after which he rubbed his penis against her vaginal area.
When Ms. Brushcini confronted respondent with these allegations, he denied that he had done anything wrong. Ms. Brushcini noted that in a subsequent telephone conversation, initiated by him, respondent stated that, if he had done such things, he needed help.
It has been respondent’s position throughout, that Moria’s claims were racially motivated and were being made by the child in an effort to disrupt respondent’s marriage to the child’s mother.
Moria, who is now 13, very credibly testified under oath and detailed the sexual contacts respondent committed against her. She stated that these events usually took place at night, while her mother was not at home; that they took place at irregular intervals; that she asked respondent to stop on many occasions; that he would stop for brief periods, but would later resume the conduct; that she feared respondent and did not attempt to resist; that respondent had warned that, if she told her mother what was taking place, the woman would probably have a heart attack and, if she revealed it to her natural father, respondent and he would undoubtedly become involved in a violent confrontation. For these reasons Moria informed neither her natural father nor her mother of respondent’s inappropriate conduct. However, Moria finally told her mother sometime after the last incident described above. She also stated that she previously revealed respondent’s conduct to a teacher or other school official. The court is concerned that, for some undisclosed reason, no action was ever taken by school authorities, although mandated to do so by statute.
Apart from the sexual contacts, respondent’s moderate drinking and frequent arguments between respondent and her mother, Moria’s description of his presence in the household *991 was otherwise appropriate. Respondent, a cook by profession, prepared meals for the family, attended to household chores and the other needs of the family. The parties went places together and visited relatives as a family.
On cross-examination, in answer to the defenses raised by respondent, Moria denied that she wanted to break up the marriage between respondent and her mother; denied that she always disliked respondent because he was black and she and her mother were white; denied that she refused to be photographed with respondent and her mother at their wedding because she was embarrassed; denied that she refused to play outdoors with respondent’s nieces when they visited because they too were black; and denied that she attempted to avoid being seen in public with respondent.
Respondent, testifying in his own defense, categorically denied all acts of impropriety with Moria and even rejected the possibility that he had engaged in any activity, however innocent, which may have been misinterpreted by Moria. He related a series of incidents which he claimed were indicative of Moria’s racial prejudice and motives in this matter. On the other hand he conceded that he had a criminal record involving two separate armed robberies and a conviction for driving while intoxicated. He acknowledged that at the time of the fact-finding hearing, he was incarcerated in State prison, after being returned on a parole violation. However, he asked the court to note that each of his prior convictions was the result of a guilty plea entered by respondent, and, that in contrast, he refuses to admit any guilt in this matter because he has done nothing wrong.
Although offered as a character witness, the testimony of Mr. Shakir was of limited value since his knowledge of respondent was essentially confined to personal contacts while respondent was incarcerated at the Dutchess County Jail and thereafter. Mr. Shakir had no knowledge of respondent’s reputation for truthfulness in the community and based his opinion as to respondent’s veracity on respondent’s adherence to various religious teachings.
The testimony of Geneva S., respondent’s mother, was limited to her observations of Moria at the reception following respondent’s marriage to Moria’s mother, which was attended by 13 to 15 people, including three of four children. She testified that Moria resisted being photographed with the wedding party and would not play with the other children *992 who were present. Although everyone present at the party, except Moria and her mother, were black, respondent’s mother stated that she did not know why Moria was acting as she did relative to the photographs or the other children.
APPLICABLE LAW AND CONCLUSIONS
Respondent as stepparent of Moria and parent of John and as an individual in whose care these children were on a regular basis, when the acts alleged occurred, is a "person responsible” for their care as defined in section 1012 (a) and (g) of the Family Court Act.
a. Abuse of Moria
Section 1012 (e) (iii) of the Family Court Act defines a sexually abused child as one who is less than 18 years of age, whose parent or other person legally responsible for the child’s care "commits or allows to be committed, a sex offense against such child, as defined in the penal law”. Section 130.60 (2) of the Penal Law provides that a person is guilty of sexual abuse in the second degree when he subjects a person less than 14 years of age to sexual contact which is defined as "any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party” (Penal Law § 130.00 [3]).
Unlike many cases involving allegations of sexual abuse where the court is asked to rely on out-of-court statements of the child, which require corroboration (see, Family Ct Act § 1046; see also, Matter of Christina F., 74 NY2d 532), here the alleged victim testified under oath and was subject to protracted and vigorous cross-examination. Her testimony was clear and detailed as to the multiple incidents which had taken place. Her testimony was not only very credible, but unshaken.
Respondent’s suggestion that Moria was motivated by racial bias and a dislike for him was equivocal at best. Much of his own testimony and that of the child indicated that Moria accepted and confided in respondent as her "dad” and that she even asked to accompany respondent to visit places, knowing that she would be the only white person there. Even if there was some embarrassment on the part of the child concerning the racial differences existing in her home, nothing was presented which came close to suggesting that Moria’s discomfort *993 was so intense that it would cause her to falsely accuse respondent of these very serious acts of misconduct.
On the other hand, the testimony of respondent, as a convicted felon, is subject to question (see, CPLR 4513; Richardson, Evidence § 506 [Prince 10th ed]; Matter of Linda O., 95 Misc 2d 744). In addition, the risk of criminal prosecution and the effect which an adverse finding in this matter might have on respondent’s eligibility for parole, raises further questions as to the credit to be accorded his testimony.
The evidence presented clearly supports a finding that respondent subjected Moria to improper sexual contacts and that the petitioner has sustained its burden as to that child.
b. Neglect of John
Section 1012 (f) (i), in pertinent part, defines a “neglected child” as one
“whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent * * * to exercise a minimum degree of care * * *
“(B) in providing the child with proper supervision or guardianship, by unreasonably inflicting harm * * * or a substantial risk thereof * * * [as a result of serious conduct] requiring the aid of the court”.
Petitioner has established that respondent sexually abused Moria. Evidence of this abuse is admissible on the issue of abuse or neglect of John (Family Ct Act § 1046 [a] [i]; see, e.g., Matter of Jovann B., 153 AD2d 858; Matter of James P., 137 AD2d 461, 462; Matter of Cruz, 121 AD2d 901, 902; Matter of Victoria SS., 108 AD2d 989, 991; Matter of Richard SS., 87 AD2d 915; Matter of T. C., 128 Misc 2d 156,157-161; Matter of Cindy B., 122 Misc 2d 395, 397).
It has been held that proof of abuse or neglect of one child, without more, constitutes neither prima facie nor presumptive evidence of abuse or neglect of another child. (See, Matter of T. C., supra, at 160). One court has even gone so far as to hold that a finding of serious sexual abuse as to one of several siblings, standing alone, was insufficient to establish a risk of abuse or neglect as to the other children who were close in age and of the same sex as the abused child (see, Matter of Cindy B., supra, at 397-398).
The court in Matter of T. C. (supra, at 159), noted that the *994 purpose of section 1046 (a) (i) of the Family Court Act was to avoid a potential relevancy objection. That court reasoned— "[i]f the Legislature had intended that proof of prior abuse or neglect of another child not related to ongoing conditions constituted prima facie evidence of abuse or neglect, it would have so provided. This provision does not so provide, a fact highlighted by its juxtaposition to those provisions [of section 1046] that accord prima facie evidence treatment to other conduct” (supra, at 160).
However, section 1046 (a) (i) should not be read in a vacuum. Rarely articulated, but at times indirectly applied in the context of derivative abuse and neglect, is the "presumption of continuance”. Applying this principle, a condition, status, state of facts or state of mind, once proved to exist, is presumed to continue (see, Richardson, Evidence § 74 [Prince 10th ed]; Fisch, New York Evidence § 1122 [2d ed]). The Court of Appeals in Wilkins v Earle (44 NY 172, 192), referring to this presumption, noted that "[a] partnership once established is presumed to continue * * *. The fact that a man was a gambler twenty months since, justifies the presumption that he continues to be one. An adulterous intercourse is presumed to continue. So of ownership and non-residence.”
In Matter of Iris C. (46 AD2d 910) the court, in a child protective proceeding, utilized this presumption to find that evidence of beatings which took place several months prior to observation of injuries, was admissible "under the theory of continuing conditions or tendencies”.
Without always claiming specific reliance on the foregoing presumption, other courts have concluded that evidence of "abuse of one child logically supports the conclusion that the parents have a faulty understanding of the duties of parenthood and that their other child is therefore neglected”. (Matter of Christina Marie C., 89 AD2d 855 [emphasis added]; see, e.g., Matter of James P., 137 AD2d 461, 464; Matter of Cruz, 121 AD2d, supra, at 903; contra, Matter of Cindy B., 122 Misc 2d, supra, at 397.)
In this case the evidence presented as to the current risk to John consisted exclusively of respondent’s conduct toward Moria, which terminated more than one year prior to the hearing. Although Moria testified about arguments between her mother and stepfather and commented about respondent’s moderate drinking, no other evidence was offered to demonstrate that respondent’s conduct had any adverse impact on *995 the children living in the household. Aside from his abuse of Moria, no independent proof was offered to suggest that respondent’s conduct toward his stepdaughter would likely be visited upon his son.
Simply put — does a finding of abuse or neglect as to one child in respondent’s care, standing alone, justify a finding that another child may be at risk as provided in section 1012 of the Family Court Act?
The provisions of section 1046 (a) (i), when applied in conjunction with the presumption of continuance (Matter of Cruz, supra, at 903), would support an affirmative answer to this question under certain circumstances.
In this court’s view, a finding of derivative abuse or neglect would be proper, if: (1) the offensive conduct proven as to one child was not remote in time (Matter of James P., supra, at 464; Matter of Maureen G., 103 Misc 2d 109; compare, Matter of Daniel C, 47 AD2d 160); (2) the conduct was serious or involved a course of abusive or neglectful behavior (see, Matter of Jovann B., 153 AD2d 858, 859, supra; Matter of Victoria SS., 108 AD2d 989, 990-991; see also, Matter of Susan B., 102 AD2d 938, 939; Matter of Richard SS., 87 AD2d 915; Matter of Shelley Renea K., 79 AD2d 1073, 1074); and, (3) the conduct demonstrated a fundamental defect in respondent’s understanding of the duties and obligations of parenthood (Matter of Christina Maria C, supra; Matter of Richard SS., supra; Matter of T. G., 128 Misc 2d 914). In deciding whether the last element has been satisfied, the court need not exclude common sense and every day experience from its deliberations (Matter of T. G., supra, at 919, and cases cited therein).
If the conduct proven as to one child conforms to the foregoing test, absent proof that an individual’s understanding of parenting has improved (Matter of Cruz, 121 AD2d, supra, at 903), this court agrees that it need not "await broken bone or shattered psyche before extending its protective cloak around [a] child pursuant to * * * article 10 of the Family Court Act” (Matter of Anthony, 81 Misc 2d 342, 345).
On the other hand, if the evidence of abuse or neglect of one child does not satisfy each element of the foregoing test, then some additional evidence, demonstrating the connection between the abuse or neglect proven and that sought to be established, would have to be submitted to support a finding of derivative abuse or neglect (see, e.g., Matter of Jovann B., supra, at 859; Matter of Shelley Renea K., 79 AD2d 1073, 1074, *996 supra; cf., Matter of Michael W., 123 AD2d 874, 875, appeal dismissed 69 NY2d 1036; Matter of Susan B., supra, at 939).
Applying the foregoing to the evidence presented in the case at bar, the proof offered as to Moria established an ongoing course of serious offensive conduct involving sexual contact by respondent; such conduct was not remote in time; and the character of respondent’s actions demonstrates a deficient and defective understanding of appropriate parental responsibility and child care. Respondent has made no credible showing that he did not engage in the conduct, nor did he demonstrate that his understanding of proper child care is other than that confirmed by the evidence presented as to Moria.
HOLDING
Based on the foregoing, the court determines that the petitioner has sustained its burden by the required preponderance of evidence and specifically finds that: (a) Moria I. is a "sexually abused child” as provided in section 1012 (e) (iii) of the Family Court Act, to the extent that she was subjected to repeated sexual contact by respondent as defined in section 130.00 (3) of the Penal Law and that such conduct constituted sexual abuse, a sex offense, defined in section 130.60 (2) of the Penal Law, and (b) John S. is a "neglected child” as provided in section 1012 (f) (i) (B) of the Family Court Act, based upon the foregoing finding that respondent engaged in a course of sexual contact with John’s half-sister, Moria, while she was in respondent’s care; such conduct creates a substantial and imminent risk that John would be subjected to the same or similar serious and inappropriate contact and harm by respondent, if the court were not to intervene to protect the child from such risk.
The matter is adjourned for the appearance of counsel only, to schedule a dispositional hearing.