Matter of William S. (2006 NY Slip Op 50941(U))

[*1]

Matter of William S.

2006 NY Slip Op 50941(U) [12 Misc 3d 1157(A)]

Decided on May 18, 2006

Family Court, Kings County

Hamill, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 18, 2006

Family Court, Kings County
In the Matter of WILLIAM S. and XENIA S. Children Under Eighteen Years of Age Alleged to be Severely Abused and/or Abused by GLORIA S. CARLOS S.
NA-2458-9/05

Ian Sangenito, Esq. for petitioner
Family Court Legal Services, Administration for Children's Services
330 Jay Street, 12th Floor
Brooklyn, New York 11201
Dawn Post, Esq., as law guardian
Juvenile Rights Division of the Legal Aid Society
111 Livingston Street, 8th Floor
Brooklyn, New York 11201
Melissa E. Bonaldes, Esq. for respondent Gloria S.
26 Court Street, No.910
Brooklyn, New York 11242
Edward Caesar, Esq. for respondent Carlos S.
26 Court Street, #2401
Brooklyn, New York 11242

Bryanne Hamill, J.
Procedural History
[*2]
On March 15, 2006, the Administration for Children's Services (hereinafter "ACS") filed a motion for summary judgment. ACS asserts there are no triable issues of fact as to the following: (1) William S., born on February 6, 2001, is an abused child by both respondents, and as a result thereof, Xenia S., born on June 16, 2004, is a derivatively abused child by both respondents; (2) William S., is a severely abused child by the respondent mother, Gloria S. (hereinafter "respondent mother"), and as a result of the abuse of William by both respondents, Xenia S. is a derivatively severely abused child by the respondent mother and the respondent father, Carlos S., (hereinafter "respondent father"); and (3) aggravated circumstances exist, as defined by Family Court Act §1012(j).
ACS' petition, filed on May 10, 2005, alleges that William S. is an abused child, and that Xenia S. is a derivatively abused/neglected child, pursuant to Family Court Act §1012. However, on February 22, 2006, with leave of this Court, ACS filed an amended petition against both respondents, alleging that the subject child William is an abused child, as defined by FCA §1012(e), and is severely abused by his mother. The amended petition further alleges that as a result of the severe abuse of William, his two-year-old half-sibling, Xenia S., is derivatively severely abused by her parents, respondent mother and respondent father. The amended petition alleges that four-year-old William suffered multiple serious injuries, including a bone-deep laceration to his chin, multiple bruises, burns and marks about his body, which respondents failed to seek timely medical attention for.
On October 25, 2005, the respondent mother pleaded guilty in Kings County Supreme Court to a violation of Penal Law §120.25, Reckless Endangerment in the First Degree, with respect to failing to seek prompt medical treatment for William's injuries, and for the two-month period from March 6 to May 6 of 2005, to a violation of Penal Law §260.10, Endangering the Welfare of William. William's stepfather, a person legally responsibly for him, also pleaded guilty to violation of Penal Law §120.25, Reckless Endangerment in the First Degree, and violation of Penal Law §260.10, Endangering the Welfare of a Child. Attached to ACS' motion are the transcripts from the Supreme Court criminal proceedings with the certificates of disposition.
William's mother's plea minutes reveal that she admitted, while acting in concert with William's stepfather, under circumstances evincing a depraved indifference to human life, she recklessly engaged in conduct which created a grave risk of death to four-year-old William, by failing to seek prompt medical attention for him. She further admitted that between March 6, 2005 and May 6, 2005, she acted in a manner that was injurious to the physical, mental and moral welfare of William.
Likewise, the stepfather's plea minutes demonstrate essentially the same admission, i.e., while acting in concert with William's mother, and under circumstances evincing a depraved indifference to human life, he recklessly engaged in conduct which created a grave risk of death to his stepson William, in that he failed to seek prompt medical attention for his William's injury. He further admitted that between March 6 and May 6, 2005, he also acted in a manner that was injurious to the physical, mental and moral welfare of William.
In opposition to the motion for summary judgment regarding Xenia, the respondent mother has submitted an affirmation by counsel but notably has failed to submit her own affidavit providing an explanation for William's injuries or denying causing his injuries, [*3]notwithstanding an adjournment to do so. The respondent father has submitted an affidavit in opposition to the motion, in support of his counsel's previously filed affirmation in opposition thereto, asserting that William fell off a bike. However, in his affidavit, he does not deny causing other documented injuries and does not deny statements in the medical records that he beat and burned William.
In support of its motion for summary judgment for derivative findings on Xenia's case, ACS has submitted the certified and delegated medical records from North Shore University Hospital, where William was hospitalized in the pediatric intensive care unit. The uncontroverted medical records reveal that four-year-old William, who was hospitalized for more than two weeks, was diagnosed with the following injuries and conditions, when respondents finally brought him for medical care on May 6, 2005: low blood pressure of 70/40; a fever; a left parietal subdural contusion; possible old 5th and 8th rib fractures; a facial gash described as a 5 cm long, 2 cm deep laceration to his mandible; two retinal hemorrhages in his left eye; and more than two dozen bruises, burns and marks about his body in different stages of healing. The child abuse team concluded that William was a battered child, that the multitude and magnitude of his injuries were not consistent with accidental means, but were repetitively, inflicted injuries. These marks included some patterned marks, identified as a well-defined belt buckle, circular lesions, a hand pattern and a grasp pattern. The bone-deep laceration to his chin was determined to be infected and approximately four days old. William had an elevated white blood cell count, anemia, abdominal pain, and likely liver trauma. His abdominal CT scan revealed a liquefying hematoma around the left kidney. This child's scalp was observed to be filled with dirt and scabs, with a 2cm laceration behind his left ear. Notably, William's statement to the x-ray technician before testing included, "are you going to hit me now?" The respondents have not disputed these injuries to William observed and documented during his admission to the hospital, immediately preceding being in their care and custody.
Analysis
The Court of Appeals established the appropriateness of summary judgments in neglect and abuse proceedings in Suffolk County DSS v. James M., 83 NY2d 178 (1994). "Summary judgment is designed to expedite all civil cases by eliminating from the Trial Calendar claims which can be properly resolved as a matter of law." Andre V. Pomeroy, 362 NY2d 313, 133 (1974). "When there is no geniune issue to be resolved at trial, the case should be summarily decided, and an unfounded reluctance to employ the remedy will only serve to swell the trial calendar and thus deny to other litigants the right to have their claims promptly adjudicated." Id. at 133. Where the moving party has demonstrated that it is entitled to summary judgment, the party opposing the motion must demonstrate by admissible evidence the existence of a triable issue of fact or tender an acceptable excuse for failing to do so, and the submission of a hearsay affirmation by counsel alone does not satisfy this requirement." Zuckerman v. City of New York, 49 NY2d 557 (1980). Unsubstantiated allegations are insufficient to raise a triable issue of fact and will not defeat entry of summary judgment. Matter of Jimmy A., 218 AD2d 734 (2nd Dept. 1995).
Family Court Act §1012(e)(ii) defines an abused child, in part, "as a child whose parent or other person legally responsible for his care creates or allows to be created a substantial risk of physical injury to such child by other than accidental means which would be likely to cause death [*4]or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ."
Social Services Law §384-b 8(a)(I) defines a child as severely abused by his or her parent if "the child has been found to be an abused child as a result of reckless or intentional acts of the parent committed under circumstances evincing a depraved indifference to human life, which result in serious physical injury to the child as defined in subdivision ten of section 10.00 of the penal law."
The respondents pleaded guilty to Penal Law §120.25 Reckless Endangerment in the First Degree, whereas both respondents admitted that, under circumstances evincing a depraved indifference to human life, they recklessly engaged in conduct which created a grave risk of death to four-year-old William, by failing to timely seek medical attention for his injuries. The respondents admit to failing to obtain medical care for William, a four-year-old child who was diagnosed as a battered child and admitted to a pediatric intensive care unit as a result thereof. This failure to act by the respondents created such a substantial risk of physical injury to William, by other than accidental means, which could reasonably cause him protracted disfigurement and protracted impairment of his physical or emotional health, if not death. Where the same conduct which results in a criminal conviction is alleged in an abuse petition, the criminal conviction is conclusive proof that the subject child is abused. Matter of Jimmy A., 218 AD2d 734 (2d Dept. 1995).
Accordingly, on April 19, 2006, this Court granted ACS partial summary judgment, finding that the respondent father, a person legally responsible for William, by clear and convincing evidence, did abuse him, pursuant to FCA § 1012(e)(ii), by virtue of his conviction for Reckless Endangerment in the First Degree, whereby under circumstances evincing a depraved indifference to human life, he recklessly engaged in conduct which created a grave risk of death to William.
This Court further found, based upon William's mother's conviction for Reckless Endangerment in the First Degree, that she abused and severely abused her son, William. Her counsel conceded that she had no legal defense inasmuch as the documentary evidence submitted with her admission to this crime satisfied the elements of abuse, pursuant to Family Court Act § 1012(e)(ii), and of severe abuse, pursuant to Social Services Law § 384-b 8(a)(I). As a result of William's severe abuse, this Court found aggravated circumstances, pursuant to FCA § 1012(j).
The remaining issues before this Court are whether two-year-old Xenia is a derivatively abused and severely abused child by her natural parents, by reason of their abuse of her four-year-old half-sibling, William.
With respect to derivative findings of abuse, Family Court Act §1046(a)(I) states that the "proof of abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of, or the legal responsibility of, the respondent." "Courts have consistently sustained derivative findings whereas respondent's abuse of the subject child is so closely connected with the care of another child as to indicate that the second child is equally at risk." Matter of Marino S., 100 NY2d 361, 374 (2003); Matter of Douglas E., 191 AD2d 694 (2d Dept. 1993). "Where the conduct which formed the basis for a finding of abuse as to one child is so proximate in time to the derivative proceeding that it can reasonably be concluded that the condition still exists, a finding of abuse should be made as to the surviving child." Matter of [*5]James P., 137 AD2d 461, 464 (1st Dept. 1988). "Such flawed notions of parental responsibility are generally reliable indicators that a parent who has abused one child will place his or her other children at substantial risk of harm." Matter of Douglas E., 191 AD2d 694 (2d Dept. 1993)
For a finding of derivative abuse, it is not necessary for ACS to prove that the siblings who were not the direct targets are likely to suffer the same injury or even a substantially similar form of mistreatment as the target child. Matter of Patricia J., 206 AD2d 847(4th Dept. 1997). Rather, ACS's burden is to show only proximity in time, after which showing the burden shifts to the respondent to show any circumstances that may differentiate the target child from the other children. Matter of James P., supra; Matter of Daniella HH., 236 AD2d 715 (3rd Dept. 1997).
In the instant case, ACS contends that Xenia is a derivatively abused child, by virtue of the respondents' admissions to, and convictions for, placing four-year-old William at grave risk of death, under circumstances evincing a depraved indifference to human life, by failing to seek prompt medical treatment for his battered body. ACS asserts that such conduct evidences such a fundamental defect in their understanding of their parental duties such that Xenia is at risk of similar abuse, thereby warranting a derivative finding of abuse.
Furthermore, ACS argues that the Court should consider the mens rea of the respondents in their failing to act. By virtue of their convictions, it is established beyond a reasonable doubt that they both acted recklessly with depraved indifference to the life of a four-year-old child in their care. By definition, both respondents were aware of, and consciously disregarded, the substantial and unjustifiable risk of harm to William. The risk was of such a nature and degree that to disregard it constituted a "gross deviation from the standard of conduct that a reasonable person would observe in the situation." NY Penal Law §15.05(3).
Based upon their criminal convictions and their abuse of four-year-old William, the contemporaneous filing of the derivative charges, and the failure of the parents to demonstrate any significant difference between William and his younger half-sibling Xenia or to demonstrate that the conditions that led to the abuse of William no longer exist, this Court finds that derivative abuse findings against Xenia's natural parents are warranted.
With respect to derivative findings of severe abuse, in the Matter of Marino S, 100 NY2d 361 (2003), the Court of Appeals sustained a finding of derivative severe abuse, holding that derivative findings of severe abuse may be predicated upon the common understanding that a parent whose judgment and impulse control is so defective as to harm one child in his care is likely to harm another child as well. In the Matter of K.W.,A.S, 8 Misc 3d 1013(A), 2005 WL 1645154 (NY Fam. Ct. 2005), the Court held that based upon a finding that the respondent committed the act of Rape in the First Degree as defined in Penal Law §130.35 against the target child, the respondent's biological child was derivatively severely abused. Insofar as the target child was not the biological child of the respondent, the Court recognized that he could not be charged with severe abuse, as there is no basis upon which to terminate parental rights, pursuant to Social Service Law §384-b. "However, as this abuse finding is coupled with a felony sex offense, this Court makes a finding of derivative severe abuse finding against the respondent as to his biological son." Id.
The legislative intent of Social Service Law § 384-b 8 (a)(iii) is to protect children from parents who commit or attempt to commit certain egregious crimes toward children, even if that child was not the actual victim of the crime. In Marino S., supra., the Court declared that this [*6]intent must be applied not only to §384-b 8(a)(iii) but to all subdivisions of the severe abuse statute, including §384-b(8)(a)(I). "To hold otherwise would require section 384-b to be interpreted so that a derivative finding can be made when a parent assaults a sibling, but not when the parent rapes a sibling or seriously injuries her under circumstances evincing a depraved indifference to her life." Id at 375.
With respect to Xenia's mother, she severely abused William, when she admitted to recklessly endangering William's life by failing to seek prompt medical attention for his serious injuries. William's medical record demonstrates he was a four-year-old battered boy, with a deep infected laceration to his jaw, retinal hemorrhages, and dozens of bruises and marks about his body. His mother has failed to submit an affidavit raising factual issues as to the causes of those injuries, and her opposition is solely based upon counsel's affirmation, notwithstanding an adjournment to submit an affidavit. "Where moving party has demonstrated its entitlement to summary judgment, the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action or tender an acceptable excuse for his failure to so, and the submission of a hearsay affirmation by counsel alone does not satisfy this requirement." Zuckerman v. City of New York, 49 NY2d 557 (1980).
Thus, finding there to be no genuine or material triable issues of fact that must be resolved, this Court finds that this mother's failure to seek medical attention for William's battered body as well as her admission, during the two months immediately preceding this, to endangering his physical, mental and moral condition, demonstrates such extraordinarily defective judgment as to warrant a derivative severe abuse finding for Xenia.
With respect to Xenia's father, he argues that derivative finding of severe abuse as to Xenia is not warranted because, among other reasons, he does not lack parental judgment and impulse control, he did not admit in his criminal plea to inflicting William' s injuries, and states in his affidavit that William fell off a bike.
In the certified and delegated medial records submitted, hospital staff documented that Xenia's father abused William by beating and burning him. The medical records reveal that William was a battered child, with dozens of bruises and lacerations in various stages of healing. Notably, this four-year-old child asked the x-ray technician at the hospital, "are you going to hit me now?"
ACS asserts that the Court need not determine the cause of William's multiple injuries because the egregious failure of the respondents to seek prompt medical attention is sufficient given: (1) the seriousness of William's injuries, (2) their mens rea, i.e., recklessly, under circumstances evincing a depraved indifference to his life, and (3) their failure presented a grave risk of death to William, resulting in his hospitalization to the pediatric intensive care unit.
Although this Court agrees that it need not decide who caused William's injuries, this Court notes the following: (1) the mother does not present an affidavit with an explanation for William's injuries; (2) she admits in her sworn testimony in Supreme Court that the injuries occurred after William was in her and Xenia's father's care and custody in New York; and (3) Xenia's father does not affirmatively deny the statements in the hospital records that he beat and burned William. Based upon the foregoing, this Court could reasonably conclude that Xenia's parents did, in fact, batter and/or fail to protect William, from the other's battering.
In the instant case, the respondents pleaded guilty to Penal Law § 120.25 Reckless [*7]Endangerment in the First Degree, whereas both respondents, under circumstances evincing a depraved indifference to human life, recklessly engaged in conducting which created a grave risk of death to four-year-old William. Additionally, they both admitted that, during the two months leading up to William's hospital admission, they acted in a manner injurious to William's physical, mental and moral condition. Accordingly, notwithstanding a factual dispute as to the cause of some of the injuries, the fact that Xenia's parents failed to obtain medical attention for William's battered body, given his obviously serious injuries, demonstrates such serious fundamental flaws in their understanding of the duties of parenthood as to place Xenia at risk of being severely abused.
Based upon the documentary evidence submitted, there are no genuine and material triable issues of fact that must be resolved as to the abuse of William, which forms the basis of the contemporaneous derivative severe abuse of Xenia. As the Court of Appeals held in Marino S., derivative findings of severe abuse may be predicated upon the common understanding that a parent whose judgment and impulse control is so defective as to harm one child in his or he care is likely to harm another as well. Undoubtedly, Xenia's parents place her at risk of being severely abused, as a result of their defective judgment that resulted in their abuse of William. The Court of Appeals recognizes that without derivative findings, a child who was severely abused, i.e., William, such that the foster care agency may be relived of is obligation to undertake diligent efforts at reunification, would be on a different permanency planning track from his or her sibling, i.e., Xenia, which is contrary to New York's child welfare policy in favor of keeping siblings together.
Based upon the statutory scheme and language of Social Services Law §384-b and its existing case law, this Court holds that a derivative finding of severe abuse, pursuant to §384-b(8)(a)(I), is authorized. Taking into account Xenia's parents' criminal convictions and William's life-threatening injuries, this Court holds that there are no genuine and material triable issues of fact that must be resolved before this Court can determine that Xenia has been derivatively abused and severely abused by her natural parents.
Accordingly, ACS' motion for summary judgment is granted to the extent that this Court enters a finding of derivative abuse, by clear and convincing evidence, against the respondent mother and respondent father, pursuant to FCA §1012(e)(ii), and a finding of derivative severe abuse, by clear and convincing evidence, pursuant to § 384-b(a)(I) of the Social Services Law. Further, this Court finds aggravated circumstances, as defined by §1012(j) of the FCA, in that Xenia is a severely abused child.
The foregoing constitutes the decision and Order of this Court.
Dated: Brooklyn, New York
 May 18, 2006
[*8]
E N T E R:
______________________________
HON. BRYANNE A. HAMILL
Judge of the Family Court