Matter of Allylynn YY. (Dorian A.) (2020 NY Slip Op 03437)





Matter of Allylynn YY. (Dorian A.)


2020 NY Slip Op 03437


Decided on June 18, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 18, 2020

528024

[*1]In the Matter of Allylynn YY. and Others, Alleged to be Abused and Neglected Children. Cortland County Department of Social Services, Respondent; Dorian A., Appellant.

Calendar Date: May 19, 2020

Before: Lynch, J.P., Clark, Devine, Pritzker and Reynolds Fitzgerald, JJ.


Rural Law Center of New York, Castleton (Keith F. Schockmel of counsel), for appellant.
Cortland County Department of Social Services, Cortland (Keith I. Cassidy of counsel), for respondent.
Pamela B. Bleiwas, Ithaca, attorney for the children.



Pritzker, J.
Appeal from an order of the Family Court of Cortland County (Campbell, J.), entered November 2, 2018, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be abused and neglected.
Krystal ZZ. (hereinafter the mother) is the mother of three children (born in 2010, 2013 and 2015). One evening, in April 2018, the mother left respondent, her boyfriend, in charge of her youngest child (hereinafter the child). While in respondent's care, the child allegedly was left in her bedroom unattended, at which time she fell from a bunk bed. Approximately an hour and a half later, when the child became unresponsive, respondent called for medical assistance. When emergency medical services arrived, the child was unresponsive and she was transported to a local hospital, where she was pronounced dead. An autopsy revealed, among other things, more than 50 contusions and abrasions located over almost all areas of the body, as well as an injury to the child's skull. The death was ruled a homicide and petitioner subsequently commenced this proceeding alleging, among other things, that all three children were neglected, that the child was abused and that her siblings were derivatively abused. After a fact-finding hearing, Family Court adjudicated the child to be neglected and abused and the child's siblings to be derivatively neglected and abused by respondent. Respondent appeals.
Respondent's sole contention on appeal is that petitioner failed to prove, by a preponderance of the evidence, that respondent abused and neglected the child, as there was no direct evidence linking the child's injuries to any of respondent's acts or omissions.[FN1] We disagree. As relevant here, to satisfy its burden on a neglect petition, the petitioner has to prove by a preponderance of the evidence that a child's "physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent or other person legally responsible for his [or her] care to exercise a minimum degree of care in providing the child with proper supervision or guardianship, by unreasonably inflicting . . . harm, or a substantial risk thereof" (Family Ct Act § 1012 [f] [i] [B]; see Matter of Aerobella T. [Bartolomeo V.], 170 AD3d 1453, 1453 [2019]). To sustain a finding of abuse, the petitioner must demonstrate, by a preponderance of the evidence, that a parent or other legally responsible person either created or inflicted — or allowed to be created or inflicted — physical injury or substantial risk of physical injury "by other than accidental means which cause[d] or create[d] a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ" (Family Ct Act § 1012 [e] [i], [ii]; see Matter of Logan C. [John C.], 154 AD3d 1100, 1102 [2017], lv denied 30 NY3d 909 [2018]). Proof of injuries to a child that would ordinarily not occur absent an act or omission of the respondent, "along with evidence that the respondent was the caretaker of the child at the time of the injury, shall be prima facie evidence of [abuse or] neglect, thereby shifting the burden to the respondent to rebut the presumption of culpability by offering a reasonable and adequate explanation for how the child sustained the injury" (Matter of Gabriella UU. [Robert UU.], 145 AD3d 1365, 1366 [2016] [internal quotation marks and citations omitted]; see Family Ct Act § 1046 [a] [ii]).
Testimony at the hearing demonstrated that, on the night of the incident, the child was home with respondent while the mother was working and, at 7:18 p.m., respondent texted the mother informing her that the child had allegedly fallen off of a bunk bed and that he thought the child had "really hurt herself." Approximately one hour later, respondent texted the mother and stated that the child did not want to wake up. Then, at approximately 9:00 p.m., respondent called 911. A paramedic who arrived at the scene of the incident soon thereafter testified that, upon his arrival, the child had no heart rate and, with the exception of her torso, was cool to the touch, which indicated to him that the child had not been breathing for a "little bit." Soon after her arrival at the hospital, the child was declared dead. Todd Caufield, a lieutenant with the Cortland County Sheriff's Office, testified that he interviewed respondent later that night. Respondent explained to him that he heard a thud as a result of the child falling off of the bunk bed after 6:30 p.m. or 7:00 p.m. and that, despite the child crying and having difficulty breathing, he let the child go to sleep while he continued to watch television. Respondent agreed with Caufield that it was neglectful for him not to call 911.
Caufield also testified regarding a photograph taken in the hallway of the child's home that revealed a hole in the sheetrock wall, along with a photograph of a hair imbedded in the sheetrock. The mother testified that she did not recall the hole being there prior to the incident. Caufield went on to testify that, according to the measurements in the photograph, the hole was 29 inches from the floor and the nearby doors could not have made the indentation where it was located. Caufield added that the child was 34½ inches tall. Caufield testified that, as lead investigator, he concluded that a fall from a bunk bed was not the cause of the child's bruises or head injury of that magnitude. James Terzian, a pathologist who conducted the autopsy of the child, also testified, at length, regarding his findings. Terzian explained that he initially observed more than 50 contusions and abrasions on almost all areas of the child's body, all of which were recent, including blood around the anus and rectum and swelling and bruising on the scalp beneath the hair. Terzian testified that a triangular piece of bone was depressed into the base of the child's skull with radiating fracture lines and blood under the scalp and inside the skull. Terzian also testified regarding evidence indicating that the child also incurred blunt trauma to the abdomen. Based on the examination, Terzian concluded that the cause of death was blunt head trauma, including the depressed triangular skull fracture. Terzian was of the opinion that the injuries were not consistent with a fall from the top of a bunk bed because of the number of bruises to different body parts and the severity of the injuries to the head. Terzian further explained that this head trauma was the result of severe force, such as throwing the body against a hard object, as opposed to gravity. Specifically, Terzian opined that this sort of injury could result from a child's head hitting sheetrock if the force was such to cause an indentation in the sheetrock. Respondent presented no witnesses and, at petitioner's request, Family Court took a negative inference against respondent for not testifying at the hearing.
We find that Terzian's testimony — that the probable cause of the child's fatal head trauma was excessive force against sheetrock — was sufficient to permit the presumption that respondent abused and neglected the child (see Family Ct Act § 1046 [a] [ii]; Matter of Brayden UU. [Amanda UU.], 116 AD3d 1179, 1180-1181 [2014]). The burden then shifted to respondent to rebut petitioner's prima facie case, which he did not do as he failed to submit medical evidence to rebut the proposed cause of death and, instead, relied on his prior statements to establish his own explanation for the incident, which Family Court clearly discredited as it is empowered to do (see Matter of Brayden UU. [Amanda UU.], 116 AD3d at 1182; Matter of James P., 137 AD2d 461, 462-463 [1988]). Accordingly, Family Court's finding that petitioner met its burden that the child was abused and neglected is supported by a sound and substantial basis in the record (see Matter of Leah VV. [Theresa WW.], 157 AD3d 1066, 1067 [2018], lv dismissed 31 NY3d 1037 [2018]; Matter of Brayden UU. [Amanda UU.], 116 AD3d at 1182).
Lynch, J.P., Clark, Devine and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The attorney for the children argues that respondent is collaterally estopped from making this argument based upon his criminal convictions of murder in the second degree, manslaughter in the first degree and endangering the welfare of a child based upon this incident. However, the record here is not sufficiently developed to determine whether collateral estoppel bars respondent's arguments.