Matter of Hazelee DD. (Nicholas EE.) (2023 NY Slip Op 06571)

Matter of Hazelee DD. (Nicholas EE.)

2023 NY Slip Op 06571

Decided on December 21, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 21, 2023

535237
[*1]In the Matter of Hazelee DD., Alleged to be a Neglected Child. Greene County Department of Social Services, Respondent; Nicholas EE., Appellant. (And Another Related Proceeding.)

Calendar Date:November 17, 2023

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Michelle I. Rosien, Philmont, for appellant.
Greene County Department of Social Services, Catskill (Margot J. Cullen of counsel), for respondent.
Monica M. Kenny-Keff, Catskill, attorney for the children.

Egan Jr., J.
Appeal from an order of the Family Court of Greene County (Charles M. Tailleur, J.), entered January 14, 2022, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent (hereinafter the father) is the father of a child (born in 2020; hereinafter the younger child) and a person legally responsible for the child's half sibling (born in 2007; hereinafter the older child), both of whom lived with the father and their mother in September 2020. Petitioner commenced these Family Ct Act article 10 proceedings against the father in February 2021, alleging that he had neglected each of the children. The petitions alleged that, on the evening of September 7, 2020, the father became embroiled in a domestic dispute with the mother of the children at their apartment. The mother and the older child fled to a neighbor's residence, where the police were called, while the father eventually walked off with the younger child. Responding officers located the father and the younger child sleeping outside around 1:00 a.m. on September 8, 2020 and had to tase the father, who was visibly intoxicated, after he became combative. After a fact-finding hearing on the petitions, Family Court issued an order in which it found that the father had neglected the younger child and derivatively neglected the older child. The father appeals, and we affirm.
"Neglect is established when a preponderance of the evidence shows that the children's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and that the actual or threatened harm to the children results from the parent's failure to exercise a minimum degree of care in providing the children with proper supervision or guardianship" (Matter of Aiden J. [Armando K.], 197 AD3d 798, 798-799 [3d Dept 2021] [internal quotation marks and citations omitted]; see Family Ct Act §§ 1012 [f] [i] [B]; 1046 [b] [i]; Matter of Joshua R. [Kimberly R.], 216 AD3d 1219, 1220 [3d Dept 2023], lv denied 40 NY3d 905 [2023]). To put it differently, neglect occurs when an individual behaves in a manner at odds with that of a reasonable and prudent parent under the circumstances (see Matter of Nicholson v Scoppetta, 3 NY3d 357, 368 [2004]; Matter of Leah VV. [Theresa WW.], 157 AD3d 1066, 1066 [3d Dept 2018], lv dismissed 31 NY3d 1037 [2018]), and that behavior results in actual harm or an "imminent threat of danger to the children [that is] near or impending, not merely possible" (Matter of Hakeem S. [Sarah U.], 206 AD3d 1537, 1538 [3d Dept 2022] [internal quotation marks and citation omitted], lv denied 39 NY3d 904 [2022]; see Matter of Allylynn YY. [Dorian A.], 184 AD3d 972, 973 [3d Dept 2020]). Neglect must be demonstrated by "competent, material and relevant evidence" at the hearing (Family Ct Act § 1046 [b] [iii]; accord Matter of Aiden J. [Armando K.], 197 AD3d at 799).
A state trooper testified at the [*2]hearing as to how he responded to a domestic incident call at approximately 11:30 p.m. on September 7, 2020 and found the mother of the children and the older child at their neighbor's residence. The mother told him that the father was intoxicated and "had pushed her down and taken the" younger child during a dispute. She and the older child then fled their apartment to seek assistance. The trooper described the mother as "very excited and hysterical" throughout the time that they spoke because of her fears for the safety of the younger child, who was only three weeks old at that point and in the hands of the drunken father. Family Court accordingly determined, and we agree, that the mother's out-of-court statements to the trooper were admissible under the excited utterance exception to the hearsay rule because they were made "under the stress and excitement of a startling event and [were] not the product of any reflection and possible fabrication" (People v Haskins, 121 AD3d 1181, 1184 [3d Dept 2014] [internal quotation marks and citation omitted], lv denied 24 NY3d 1120 [2015]; see People v Cotto, 92 NY2d 68, 79 [1998]; People v Gilmore, 200 AD3d 1184, 1190 [3d Dept 2021], lv denied 38 NY3d 927 [2022]; People v Rivera, 132 AD3d 530, 530 [1st Dept 2015], lv denied 27 NY3d 1074 [2016]; cf. Matter of Aiden J. [Armando K.], 197 AD3d at 799). The trooper further described how he took the mother and the older child back to their apartment and how, after finding that it was empty, he radioed for assistance to search for the father and the younger child.
A sergeant from the Greene County Sheriff's office and two deputy sheriffs responded to that request for assistance, and the sergeant and one of the deputies also testified. The sergeant described how he was patrolling the area on what he described as a cold evening and how, at approximately 1:00 a.m., he pointed the spotlight of his vehicle into a field where noises had been heard earlier and spotted "a blanket underneath a tree" and what appeared to be the top of a man's head poking out of it. The sergeant radioed for backup and, when it arrived, he and one of the deputies approached a man who turned out to be the father. The father did not respond to their repeated directives to show his hands, but finally woke up when the sergeant and deputy removed the blanket and pulled him up into a sitting position, at which point the sergeant observed the younger child wrapped in another blanket "underneath [the father's] left shoulder area." The sergeant directed the second deputy to take the younger child, at which point the father became belligerent and eventually had to be tased. The sergeant further described how the father smelled of alcohol, had slurred speech and was found with a bottle of liquor that "was at least three quarters empty," and those observations, particularly given the sergeant's training in spotting signs of intoxication, allowed him to properly offer the opinion that the father was "highly [*3]intoxicated" (see e.g. People v Cruz, 48 NY2d 419, 428 [1979]; Ryan v Big Z Corp., 210 AD2d 649, 651 [3d Dept 1994]). The second deputy largely corroborated the sergeant's account, including that the temperature was around 30 degrees and that she got the younger child out of harm's way while the sergeant and the other deputy dealt with the father. She also agreed with the sergeant that the father was "passed out" initially and appeared to be "very intoxicated," as well as that there was a "half" empty bottle of alcohol in the father's backpack that, in her estimation, originally contained 1.5 liters.
The father, who left Greene County a few hours after the incident and eventually moved to Florida, testified virtually and disputed the foregoing proof in various respects. He portrayed his disagreement with the mother as a verbal one triggered by her mental illness and denied that he had been drinking earlier in the evening. He further denied that he had fallen asleep in the field — although he admitted bringing a bottle of brandy with him when he went outside with the younger child to take a walk — and claimed that he was the victim of an unprovoked assault by the police. Family Court found the bulk of the father's testimony to be incredible, however, instead crediting the proof that he was intoxicated, took the younger child outside on a cold night and sat down under a tree in the dark, placing the younger child at imminent risk of harm given the likelihood that he would pass out and drop her onto the ground unattended or, worse, fall onto her. Family Court found that this constituted neglect and, moreover, that the father's failure to provide a minimal degree of supervision as to the younger child constituted derivative neglect of the older child.
According deference to Family Court's findings of fact and assessments of credibility, we are satisfied that a sound and substantial basis exists for its determination that the father neglected the younger child in that a reasonably prudent parent would not drink heavily, take a three-week-old child outside on a cold night and sit down for a prolonged period, thereby creating an imminent risk of harm to the child from, among other things, being crushed if he or she passed out or fell asleep on the child (see e.g. Matter of Joshua R. [Kimberly R.], 216 AD3d at 1222-1223; Matter of Nevaeh L. [Katherine L.], 177 AD3d 1400, 1402 [4th Dept 2019]; Matter of Leah VV. [Theresa WW.], 157 AD3d at 1067). We are further satisfied that this behavior "reflected such fundamentally flawed parenting as to create a compelling concern for the safety of all children in the household" and, thus, warranted a finding of derivative neglect with regard to the older child (Matter of Christina BB., 305 AD2d 735, 736-737 [3d Dept 2003]; accord Matter of Bryce Y. [Clint Y.], 200 AD3d 1129, 1131 [3d Dept 2021], lv dismissed 38 NY3d 1019 [2022]).
The father's remaining contention, that Family Court exhibited bias against him and deprived [*4]him of a fair hearing, is unpreserved for our review (see Matter of Ashlyn Q. [Talia R.], 130 AD3d 1166, 1169 [3d Dept 2015]; Matter of Borggreen v Borggreen, 13 AD3d 756, 757 [3d Dept 2004]). Our review of the record, in any event, shows that argument to be without merit (see Matter of Gallo v Gallo, 138 AD3d 1189, 1190 [3d Dept 2016]; Matter of Borggreen v Borggreen, 13 AD3d at 757).
Garry, P.J., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.