## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:  July 7, 2016                    521140
_____

In the Matter of MASON F. and
    Another, Alleged to be
    Severely Abused Children.

ULSTER COUNTY DEPARTMENT OF
    SOCIAL SERVICES,
                    Respondent-
                    Appellant;

KATLIN G.,
                    Appellant-
                    Respondent.

LOUIS F.,
                    Appellant.

(Proceeding No. 1.)
_____          MEMORANDUM AND ORDER

In the Matter of MASON F. and
    Another, Alleged to be
    Neglected Children.

ULSTER COUNTY DEPARTMENT OF
    SOCIAL SERVICES,
                    Respondent-
                    Appellant;

KATLIN G.,
                    Appellant-
                    Respondent.

LOUIS F.,
                    Appellant.

(Proceeding No. 2.)
_____


Calendar Date:  June 1, 2016

Before: Peters, P.J., Garry, Rose, Mulvey and Aarons, JJ.

_____

Theodore J. Stein, Woodstock, for appellant-respondent.

Diana L. Kidd, New Paltz, for appellant.

Daniel Gartenstein, Ulster County Department of Social Services, Kingston, for respondent-appellant.

Lawrence Shelton, Kingston, attorney for the child.

_____

Aarons, J.

Cross appeal from an order of the Family Court of Ulster County (McGinty, J.), entered May 6, 2015, which partially granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be severely abused and/or neglected.

Respondent and Louis F. (hereinafter the father) are the parents of two boys (born in 2011 and 2013). In August 2014, while living with respondent and her boyfriend, the older child died due to blunt-impact injuries to his head, torso and extremities.[1] The younger child was temporarily removed from respondent's home, and petitioner commenced these two Family Ct Act article 10 proceedings against respondent, alleging that she neglected the children and that she severely abused the older child and derivatively severely abused the younger child by, among other things, failing to get medical attention for the older child when she was aware that he was covered in bruises and in need of medical care.

_____

[1] As a result of the death of the older child, the boyfriend was convicted of murder in the second degree.

Following a fact-finding hearing, Family Court determined that respondent neglected and abused the older child and derivatively neglected and abused the younger child. Family Court, however, dismissed the petition alleging severe abuse, finding that the evidence did not establish that respondent displayed an utter disregard for human life resulting in the older child's death. After a dispositional hearing, Family Court entered an order of fact-finding and disposition, which, among other things, granted custody of the younger child to the father. Respondent appeals from Family Court's order to the extent that it found that she abused the children.[2] Petitioner and the father cross-appeal from that part of Family Court's order which dismissed petitioner's severe abuse petition.[3]

Addressing first the allegations of severe abuse, petitioner contends that Family Court erred in dismissing the severe abuse petition. We agree. A determination of severe abuse requires that "'the child [is] an abused child as a result of reckless or intentional acts of the parent committed under circumstances evincing a depraved indifference to human life, which result in serious physical injury to the child as defined in [Penal Law § 10.00 (10)]'" (Matter of Nicholas S. [John T.], 107 AD3d 1307, 1311 [2013], lv denied 22 NY3d 854 [2013], quoting Social Services Law § 384-b [8] [a] [i]).[4] A depraved indifference is "'best understood as an utter disregard for the value of human life – a willingness to act not because one

_____

[2]  Respondent has abandoned any claim regarding Family Court's finding of neglect and derivative neglect by not raising it in her brief (see Matter of Wendy Q. v Jason Q., 94 AD3d 1371, 1372 n 2 [2012]).

[3]  Because the father advances the same arguments as petitioner, it is unnecessary to decide whether the father has standing in this appeal (see Social Services Law § 384-b [3] [b]; cf. Matter of Cadence SS. [Amy RR.-Joshua SS.], 103 AD3d 126, 127-129 [2012], lv denied 21 NY3d 853 [2013]).

[4]  A deceased child may be the subject of a severe abuse petition (see Matter of Alijah C., 1 NY3d 375, 379-380 [2004]).

intends harm, but because one simply [does not] care whether grievous harm results or not[, and which reflects] wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable acts'" (Matter of Dashawn W. [Antoine N.], 21 NY3d 36, 48 [2013], quoting People v Suarez, 6 NY3d 202, 214 [2005]). A finding of severe abuse must be based upon clear and convincing evidence (see Family Ct Act §§ 1046 [b] [ii]; 1051 [e]; Matter of Rebecca KK., 61 AD3d 1035, 1037 [2009]; Matter of Julia BB. [Diana BB.], 42 AD3d 208, 216 [2007], lvs denied 9 NY3d 815 [2007]), and issues of credibility are "'entrusted to the sound discretion of Family Court and will not be disturbed unless clearly unsupported by the record'" (Matter of Tiarra D. [Philip C.], 124 AD3d 973, 974 [2015], quoting Matter of Justin CC. [Tina CC.], 77 AD3d 1056, 1057 [2010], lv denied 16 NY3d 702 [2011]).[5]

The evidence from the fact-finding hearing establishes that approximately two weeks after respondent and her boyfriend started dating, the boyfriend moved in with respondent and her children. The boyfriend took care of the children during the day while respondent worked. Respondent testified that the boyfriend "looked like a good father with [the children]," but she also admitted that the extent of the older child's bruising was abnormal once they started living together. More critically, in the days before the older child's death, respondent acknowledged that it looked as though the older child had a "stick up his ass" when he walked. Respondent was aware that the older child's eating was abnormal and that he was sleeping more. She even posted on her social media account that he was "horribly sick." Respondent was likewise aware of bruises on the older child's eye, stomach, groin and back and that he had vomit of a black color and a bowel movement that consisted of a blood clot.

Other witnesses also testified to the extensive and serious injuries that the older child sustained prior to his death. One

---

[5] In 2013, the Legislature amended Family Ct Act § 1051 (e) so that a "diligent efforts" finding is no longer a required element of a finding of severe abuse in the context of a Family Ct Act article 10 proceeding (see L 2013, ch 430, § 1; Matter of Amirah L. [Candice J.], 118 AD3d 792, 794 [2014]).

witness, who has a child with the boyfriend, testified that she met with the boyfriend two days prior to the older child's death, at which time the boyfriend told her that the older child looked like he had been hit by a bus. This witness testified that upon seeing the older child, he was pale, had a black eye, had three bruises on one cheek and one bruise on the other, had a cut lip, and had bruises on his arms and legs. The police officer and paramedic, each of whom responded to the emergency call regarding the older child, observed that, at the time of the child's death, the older child had dried blood on his lips and had bruises all over his body, including on his back, right gluteus, arms, legs, torso, chest and abdominal area, genital and pelvic area, head and face. The paramedic observed that the older child was found with a clenched fist and constricted eyes suggesting that he had experienced pain in the moments prior to his death. She also testified that the newer bruises did not appear to be accidental, and that the bruise on the older child's rib cage was in the shape of a hand. The chief medical examiner who performed the autopsy of the older child testified that, at the time of the older child's death, there were over 60 bruises on his body and the bruises had been inflicted at different times. The chief medical examiner also explained that the older child had sustained, among other things, a fractured rib and a severed pancreas. He further noted an older abdominal injury that had caused blood to accumulate in the older child's abdominal cavity and that would have manifested symptoms similar to a stomach virus and produced blackish-colored blood in his vomit.

In view of the foregoing evidence presented at the fact-finding hearing, we conclude that Family Court erred in dismissing the severe abuse petition. Respondent demonstrated reckless judgment and disregard for the safety and well-being of the older child by allowing the boyfriend – who she had dated for only a very brief period of time and knew went out at night to procure illegal drugs – to care for her children and, significantly, by permitting him to continue to care for her children and inflict further abuse after the older child had sustained serious and an abnormal degree of bruising, which she unreasonably attributed to accidental causes and the explanations provided by the boyfriend (see Matter of Nyheem E. [Jamila G.], 134 AD3d 517, 518 [2015]; Matter of Vivienne Bobbi-Hadiya S.

[Makena Asanta Malika McK.], 126 AD3d 545, 546 [2015], lvs denied 25 NY3d 909, 1064 [2015]; Matter of Kayden E. [Luis E.], 88 AD3d 1205, 1206-1207 [2011], lv denied 18 NY3d 803 [2012]). To that end, respondent was aware, or should have been aware, of the older child's numerous injuries indicative of extensive, repeated and accumulating abuse.

Equally troubling is respondent's failure to seek professional medical treatment for the older child notwithstanding her knowledge of numerous visible injuries. Even when respondent observed the older child having a bowel movement that consisted of a blood clot, combined with her observation of black fluid in his vomit, she still did not seek any medical attention for him, which the chief medical examiner explained was necessary with the presentation of those symptoms. Notably, respondent's coworker, grandmother and even the boyfriend had discussions with respondent about bringing the older child to a doctor, but respondent, at most, only contemplated doing so. She ultimately refused because of her concern that child protective services was actively investigating her in an open case (see Matter of George S. [Hilton A.], 135 AD3d 563, 564 [2016]; Matter of Nyheem E. [Jamila G.], 134 AD3d at 518; Matter of Amirah L. [Candice J.], 118 AD3d 792, 794 [2014]). In other words, any failure of respondent, as a layperson, to realize the extent of the older child's injuries played no role in her choice not to seek medical attention for him. Rather, the driving force behind her decision was to protect herself and avoid further scrutiny from child protective services. While respondent justified her reluctance to seek medical attention due to her belief that the older child was anemic and that he bruised easily, the record is devoid of any evidence to substantiate that claim. By placing her interests above the health, well-being and medical needs of the older child, who, at that young age, depended and relied on respondent for care, we conclude that there was clear and convincing evidence to support a finding that respondent acted with a disregard for human life that resulted in serious injury to the child and that the older child was severely abused by respondent (see Matter of Dashawn W. [Antoine N.], 21 NY3d at 49; Matter of George S. [Hilton A.], 135 AD3d at 564; Matter of Amirah L. [Candice J.], 118 AD3d at 794).

We also agree with petitioner's allegation that the younger child was derivatively severely abused.  A finding of derivative severe abuse "may be predicated upon the common understanding that a parent whose judgment and impulse control are so defective as to harm one child in his or her care is likely to harm others as well" (Matter of Marino S., 100 NY2d 361, 374 [2003] [internal quotation marks and citation omitted], cert denied 540 US 1059 [2003]).  The evidence, including testimony from a pediatrician who examined the younger child three days after the older child died, reflects that the younger child had a severe ear infection that required medical care, in addition to "very inflamed nipples" and a "suction injury or hickey" below the right nipple, each of which were patently severe enough to be indicative of trauma and possible sexual abuse.  In view of this evidence, the severity and extent of the older child's injuries and respondent's failure to obtain medical care for the older child, we find that the record as a whole demonstrates by clear and convincing evidence fundamental flaws in respondent's understanding of the duties of parenthood that are so profound as to place any child in her care at substantial risk of harm (see Matter of Marino S., 100 NY2d at 374-375; Matter of Dawn M. [Michael M.], 134 AD3d 1197, 1198 [2015]; Matter of Brayden UU. [Amanda UU.], 116 AD3d 1179, 1182 [2014]).

Finally, in light of our findings of severe abuse and derivative severe abuse, which, under the circumstances of this case do not require remittal for a new dispositional hearing (cf. Matter of Dashawn Q., 112 AD3d 1250, 1253 [2013]), we conclude that Family Court's determination that the older child was abused and the younger child was derivatively abused was amply supported by a preponderance of the evidence and, thus, we see no basis to disturb such determination (see Matter of Nyheem E. [Jamila G.], 134 AD3d at 519; Matter of Ashlyn Q. [Talia R.], 130 AD3d 1166, 1169 [2015]; Matter of Loraida R. [Lori S.], 97 AD3d 925, 927 [2012]).

Peters, P.J., Garry, Rose and Mulvey, JJ., concur.

ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as dismissed that part of the petition in proceeding No. 1 as failed to find that respondent severely abused the subject children; petition granted to that extent; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court