Devine, J.
 

 Cross appeals from an order of the Family Court of Schuyler County (Morris, J.), entered May 12, 2016, which, among other things, partially granted petitioner’s applications, in three proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected, abused, derivatively neglected and/or derivatively abused.
 

 Respondent Miranda LL. (hereinafter the mother) and respondent John C. (hereinafter the father) are the parents of a son and a daughter (born in 2008 and 2013, respectively). The father had legal and physical custody of the children and, with the mother enjoying only limited visitation, he often entrusted them to the care of respondent Peggy SS. (hereinafter the caretaker). The children were at the caretaker’s residence when, in March 2015, the daughter suffered a spiral fracture of her left tibia. The children were again with the caretaker when, on May 28, 2015, the daughter was found to have severe injuries. She was diagnosed with, among other things, a subdural hematoma and bilateral retinal hemorrhages that required hospitalization.
 

 A variety of proceedings ensued that resulted in the children being temporarily removed and placed in foster care. The three petitions at issue here were filed against the father, the mother and the caretaker in August 2015, alleging that the children had been severely abused, abused and/or neglected. An extensive fact-finding hearing ensued, the result of which was a May 12, 2016 “clarifying” order in which Family Court adjudicated the daughter to be abused and neglected by the father and the caretaker and neglected by the mother. Family Court further adjudicated the son to be neglected and derivatively abused by the father, derivatively neglected and derivatively abused by the caretaker and derivatively neglected by the mother. The father, the mother and the caretaker appeal, and the attorney for the children and petitioner cross-appeal, from that order.
 

 Contrary to the contentions of the father, the mother and the caretaker, a sound and substantial basis in the record exists for the findings of substantiated abuse and neglect made by Family Court. As a general matter, a finding of abuse demands that a petitioner demonstrate, by a preponderance of the evidence, that a parent or other legally responsible person “inflict [ed] or allow [ed] to be inflicted upon [a] child physical injury by other than accidental means which cause [d] or create [d] a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ” (Family Ct Act § 1012 [e] [i]; see Family Ct Act § 1046 [b] [i]; Matter of Natalie AA. [Kyle AA.], 130 AD3d 50, 52 [2015]). As for neglect, a petitioner must show by a preponderance of the evidence that the child’s “physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent or other person legally responsible for his [or her] care to exercise a minimum degree of care” (Family Ct Act § 1012 [f] [i]; see Matter of William, KK. [Samantha LL.], 146 AD3d 1052, 1052 [2017]).
 

 Many of the allegations here stem from the May 2015 injuries to the daughter and, in that regard, a petitioner establishes a prima facie case of child abuse or neglect when it demonstrates by a preponderance of the evidence that a child suffered “injuries that ‘would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible’ ” who was caring for the child at the relevant time (Matter of Avery KK. [Nicholas KK.], 144 AD3d 1429, 1430 [2016], quoting Family Ct Act § 1046 [a] [ii] [citations omitted]; see Matter of Philip M., 82 NY2d 238, 244 [1993]; Matter of Ashlyn Q. [Talia R.], 130 AD3d 1166, 1167 [2015]). If that prima facie case is established, “it then falls to the respondent [ ] to rebut the presumption of culpability by offering a reasonable and adequate explanation for how the child sustained the injuries]” (Matter of Ashlyn Q. [Talia R.], 130 AD3d at 1167; see Matter of Philip M., 82 NY2d at 244; Matter of Natalie AA. [Kyle AA.], 130 AD3d at 52).
 

 Here, the daughter broke her left leg while being supervised by the caretaker in March 2015 and, while the father knew of the injury, he made no effort to seek out medical treatment for her until the next day. The daughter was eventually diagnosed at the hospital with a fractured left tibia, an injury that the examining physician assistant testified raised suspicions of abuse notwithstanding the proffered explanation that it had been caused by the son. The ensuing child protective investigation did not confirm those suspicions, but did reveal that the father had inappropriately cursed at and berated the son at the hospital and elsewhere in the daughter’s presence. The investigating caseworker further testified that the father had, in addition to failing to promptly obtain medical care for the daughter, failed to follow through on recommended early intervention and parent education. As such, the report was indicated against the father for neglect with regard to both children.
 

 The father temporarily stopped relying upon the caretaker after the March 2015 incident but, in the days leading up to the May 2015 incident, again entrusted the children to her care. The father had every reason to be aware of how the caretaker dealt with the children — and had ample opportunity to participate in that care himself — frequently visiting the caretaker’s residence and sleeping there on the night before emergency medical responders were summoned there in May 2015. The mother also had two six-hour visits with the children after the caretaker resumed her ministrations and had reason to be concerned about the daughter’s care, having observed blisters in her mouth and on her arm, a mark on the bottom of her foot and bruises on her legs. The mother limited her response to telling the father about her concerns and did not seek medical attention for the injuries herself.
 

 On May 28, 2015, emergency responders, several of whom testified, were summoned to the caretaker’s home to find the frantic caretaker holding the daughter on the front lawn. The daughter lacked a pulse, was not obviously breathing and had extensive bruising on her abdomen, back, arms and legs, prompting her quick transport to a local hospital. A nurse in the emergency room there found the daughter to have obvious head trauma, blood in her mouth and nose and suspicious bruising of varying vintages, prompting her evacuation by air to another hospital for pediatric intensive care. Her diagnosed injuries included a subdural hematoma, bilateral retinal hemorrhages and “significant bruising over her entire body.” Treating physicians testified that the subdural hematoma and bilateral retinal hemorrhages in particular were likely the result of one extreme and nonaccidental trauma that occurred in the hours before emergency responders were summoned. The physicians left no doubt that these injuries had the potential to be mortal and that the accounts advanced by the caretaker and the father did not explain how they were inflicted. There was also little doubt that, in view of the varying ages of the daughter’s bruises, other incidents had occurred.
 

 There is no need to belabor the point that this extensive and damning proof was enough to satisfy petitioner’s burden of demonstrating that the father and the caretaker either inflicted nonaccidental injuries upon the daughter in May 2015 or allowed them to occur (see Family Ct Act §§ 1012 [e] [i], [ii]; 10.46 [a] [ii]), that all three respondents placed one or both children in actual or Imminent danger of physical, emotional or mental impairment from March 2015 onward (see Family Ct Act § 1012 [f] [i] [B]), and that various “acts or omissions” of each “evince [d] such flawed parental judgment as to place any child in their care at risk” (Matter of Maddesyn K., 63 AD3d 1199, 1202 [2009]; see Matter of Avery KK. [Nicholas KK.], 144 AD3d at 1430). The father and the caretaker failed to rebut the evidence of their culpability for the abuse of the daughter, offering nothing to call the medical opinions proffered into question and explaining their own actions in testimony that Family Court found to be inadequate, incredible or both. The absence of proof to materially undercut the evidence of neglect on the part of the father, the mother and the caretaker is also notable. Therefore, deferring to Family Court’s assessments of credibility, a sound and substantial basis in the record exists for its findings of abuse (see Matter of Keara MM. [Naomi MM.], 84 AD3d 1442, 1443-1444 [2011]; Matter of Miranda HH. [Thomas HH.], 80 AD3d 896, 899 [2011]) and neglect (see Matter of Ameillia RR. [Megan SS. — Jered RR.], 112 AD3d 1083, 1084-1085 [2013]).
 

 Turning to the cross appeals of petitioner and the attorney for the child, we agree that Family Court should have adjudicated the daughter to be severely abused at the hands of the father. A finding of severe abuse requires clear and convincing evidence that a child was found to be abused “as a result of reckless or intentional acts of the parent committed under circumstances evincing a depraved indifference to human life, [that] result in serious physical injury to the child as defined in [Penal Law § 10.00 (10)]” (Social Services Law § 384-b [8] [a] [i]; see Family Ct Act §§ 1046 [b] [ii]; 1051 [e]; Matter of Mason F. [Katlin G. — Louis F.], 141 AD3d 764, 765 [2016], lv denied 28 NY3d 905 [2016]). The father was present for much of the time period when the daughter could have received her serious and potentially fatal injuries in May 2015, he offered no compelling explanation for what caused them, and he was adjudicated to have abused her as a result. He also recklessly permitted the caretaker, under whose care the daughter had already suffered serious and suspicious injuries in March 2015, to resume caring for her, and should have been aware of extensive bruising on the daughter that was suggestive of abuse or neglect. “By placing [his] interests above the health, well-being and medical needs of the [daughter], who, at that young age, depended and relied on [the father] for care, we conclude that there was clear and convincing evidence to support a finding that [the father] acted with a disregard for human life that resulted in serious injury to the [daughter] and that the [daughter] was severely abused” by him (Matter of Mason F. [Katlin G. — Louis F.], 141 AD3d at 767; see Matter of Mackenzie P.G. [Tiffany P.], 148 AD3d 1015, 1016-1017 [2017]; Matter of George S. [Hilton A.], 135 AD3d 563, 564 [2016]; Matter of Kayden E. [Luis E.], 88 AD3d 1205, 1206-1207 [2011], lv denied 18 NY3d 803 [2012]).
 

 Lastly, in view of the scant evidence regarding the caretaker’s treatment of the son, Family Court properly declined to find that she had directly neglected him. The remaining contentions of the parties are either unpreserved or lack merit.
 

 Garry, J.P., Egan Jr., Aarons and Rumsey, JJ., concur.
 

 Ordered that the order is modified, on the law, without costs, by reversing so much thereof as dismissed petitioner’s application in proceeding No. 1 to adjudicate Brianna C. to be severely abused by respondent John C.; said petition granted to that extent; and, as so modified, affirmed.