Matter of Logan C. (John C.) (2019 NY Slip Op 01291)





Matter of Logan C. (John C.)


2019 NY Slip Op 01291


Decided on February 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 21, 2019

526082

[*1]In the Matter of LOGAN C. and Another, Alleged to be Permanently Neglected Children. SCHUYLER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JOHN C., Appellant.

Calendar Date: January 14, 2019

Before: Garry, P.J., Egan Jr., Lynch, Clark and Pritzker, JJ.


Lisa K. Miller, McGraw, for appellant.
Kristin E. Hazlitt, Schuyler County Department of Social Services, Watkins Glen, for respondent.
Pamela D. Gee, Big Flats, attorney for the children.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeals from two orders and an amended order of the Family Court of Schuyler County (Morris, J.), entered December 15, 2017, May 22, 2018 and July 2, 2018, which, among other things, granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights.
The underlying facts of this case are more fully set forth in this Court's prior decision (Matter of Logan C. [John C.], 154 AD3d 1100 [2017], lv denied 30 NY3d 909 [2018]). Briefly, respondent is the father of a son (born in 2008) and a daughter (born in 2013). Respondent previously had legal and physical custody of the children, with their mother having limited visitation. During such time, respondent regularly entrusted the care of the children to a family [*2]friend (hereinafter the caretaker). In 2015, the daughter sustained severe injuries while at the caretaker's residence — a spiral fracture of her left tibia in March 2015 and a life-threatening subdural hematoma and bilateral retinal hemorrhages in May 2015 (id. at 1101). As a result, petitioner filed petitions, alleging, as relevant here, neglect, abuse and severe abuse of the children by respondent (id.). Various proceedings thereafter ensued resulting in the children being temporarily removed and placed in foster care. Following a fact-finding hearing, Family Court ultimately determined, among other things, that the daughter was abused and neglected by respondent and that the son was derivatively abused and neglected by respondent (id. at 1101-1102). On appeal, this Court found a sound and substantial basis in the record to support the findings of abuse and neglect, but also modified the order, determining that Family Court "should have adjudicated the daughter to be severely abused at the hands of [respondent]" (id. at 1104-1105).
In April 2016, Family Court entered a stipulated dispositional order, continuing the placement of the children in foster care and set forth specific requirements for respondent to meet in order to accomplish the permanency planning goal of reunification with the children, including, among other things, respondent's participation in a drug and alcohol evaluation, mental health counseling and enrolling with a parent educator [FN1]. In January 2017, petitioner commenced this proceeding to terminate respondent's parental rights on the ground of permanent neglect or, alternatively, on the basis that he is unable to care for the children due to a mental illness. Following a fact-finding hearing, Family Court issued a December 2017 order finding the children to be permanently neglected and scheduled a dispositional hearing. Thereafter, following a dispositional hearing, Family Court issued a May 2018 order terminating respondent's parental rights and granting custody of the children to petitioner, on the condition that, as relevant here, petitioner and the attorney for the children ensure that the son's therapist is consulted prior to implementation of the subject order. Petitioner then moved to reargue and modify the May 2018 order, seeking to strike the subject condition as contrary to Family Court's statutory or legal authority. In July 2018, Family Court entered an amended order of disposition, terminating respondent's parental rights and granting custody of the children to petitioner, subject to a revised condition that petitioner and the attorney for the children ensure that the son's therapist is consulted prior to implementation of the order "regarding the manner and method of informing the children of consequences of this [o]rder and in the cessation of visitation and contact between the children and [respondent]." Respondent now appeals the December 2017 fact-finding order, May 2018 dispositional order and July 2018 amended order of disposition.[FN2]
Respondent initially contends that Family Court erred in finding that he permanently neglected the children. We disagree. In order to establish permanent neglect, "petitioner first had to prove by clear and convincing evidence that it made diligent efforts to encourage and strengthen respondent's relationship with the children" (Matter of Keadden W. [Hope Y.], 165 AD3d 1506, 1507 [2018], lv denied ___ NY3d ___ [Feb. 14, 2019]; see Social Services Law § 384-b [7] [a], [f]; Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 429 [2012]; Matter of Timothy GG. [Meriah GG.], 163 AD3d 1065, 1070 [2018], lv denied 32 NY3d 908 [2018]). The evidence introduced at the hearing established that, following the children's temporary removal from respondent's custody, petitioner assigned respondent a caseworker who worked with him consistently from June 2015 through July 2017. During such time, the caseworker helped facilitate and supervise visitation between respondent and the children both at petitioner's Family Resource Center and, later, during certain community visits. The caseworker referred and repeatedly encouraged respondent to engage in services, including mental health services, parent education classes and anger management classes. Respondent was also referred to and subsequently provided with a parent educator who attended regular coaching visits between respondent and the children and attempted to provide respondent with subsequent "debriefing" sessions in an effort to facilitate his relationship with the children [FN3]. Respondent was also referred for and received a psychological evaluation and, based on the results thereof, was encouraged to engage in mental health services. The caseworker also monitored respondent's compliance with the various services that were offered and provided regular and consistent reminders as to the importance of engaging in same [FN4]. Accordingly, on the record before us, we find ample support in the record demonstrating that petitioner made diligent efforts to, among other things, provide the appropriate services to respondent and encourage and strengthen his relationship with the children (see Matter of Keadden W. [Hope Y.], 165 AD3d 1507-1508; Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1179 [2017]).
Petitioner further demonstrated that respondent failed to adequately plan for the children's future (see Matter of Jahvani Z. [Thomas V.—Mariah Z.], ___ AD3d ___, ___, 90 NYS3d 681, 686 [2019]; Matter of Angelo AA. [Tashina DD.], 123 AD3d 1247, 1249 [2014]). In determining whether a parent has adequately planned in such a manner, Family Court "may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (Social Services Law § 384-b [7] [c]). Ultimately, "[a] parent must, at a minimum, take meaningful steps to correct the conditions that led to the children's initial removal from the home" (Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d 1077, 1078 [2018] [internal quotation marks, brackets and citations omitted]).
Here, Family Court's April 2016 stipulated order of disposition required respondent to, among other things, actively participate and cooperate with petitioner's referrals and recommendations, notify petitioner of any change in address, participate and cooperate with an [*3]evaluation by an approved mental health counselor and enroll and cooperate with a parent education program. Although respondent did complete a court-ordered drug and alcohol evaluation and treatment and anger management, he failed to adequately complete the required parent education meetings and failed to engage in mental health treatment. With respect to the parent education meetings, the father initially attended four coaching visits and regularly exercised his visitation; however, he failed to engage in the requisite post-visit debriefing sessions with his assigned parent educator that were intended to help strengthen both his parenting skills and his relationship with the children. The assigned parent educator, therefore, testified that she could not say whether respondent had progressed at all during the program, as he did not appear to be implementing the offered parenting strategies and she was unable to address with him the concerns that she had regarding his engagement with the children, certain safety concerns that she observed during visits and the fact that he did not appear to understand the severity of his daughter's health condition as a result of her injury [FN5]. Additionally, the caseworker testified that during one of respondent's community visits with the children, she observed that the caretaker was present. She was also aware of another occasion where respondent was at the caretaker's home. The caseworker testified that she had multiple discussions with respondent about the appropriateness of his continued contact with the caretaker inasmuch as the daughter was seriously injured while in her care. The caseworker indicated her ongoing concern because respondent did not seemingly perceive this as a problem, demonstrating, among other things, that he was not taking his daughter's injury seriously.
Further, with respect to mental health treatment, respondent's psychological evaluation indicated that he appeared to suffer from a personality disorder with characteristics of passive-aggressiveness, narcissism and dependency and depression with anxiety such that the forensic psychologist who performed the evaluation testified that, unless treated, it would be difficult to foresee respondent providing a safe and nurturing environment for the children. Notwithstanding, respondent failed to enroll in mental health treatment, failed to attend scheduled appointments with regard to getting enrolled in same and, as such, had not taken the minimal steps necessary to obtain the treatment intended to address the very issues that led to the children's removal in the first instance. Respondent also failed to keep petitioner abreast of his multiple changes in address,[FN6] he violated his probation with regard to an unrelated grand larceny conviction and he also acknowledged that he was willfully not paying his child support despite having the financial ability to do so. It is evident, therefore, that respondent failed to take the [*4]necessary steps to adequately address the issues that led to the children's removal despite having been provided numerous resources and support intended to address same (see Matter of Jahvani Z. [Thomas V.—Mariah Z.], 90 NYS3d at 686; Matter of Alexander Z. [Jimmy Z.], 149 AD3d at 1180). Accordingly, we find that the record amply supports Family Court's determination that respondent permanently neglected the subject children (see Matter of Zyrrius Q. [Nicole S.], 161 AD3d 1233, 1234-1235 [2018], lv denied 32 NY3d 903 [2018]; Matter of Cordell M. [Cheryl O.], 150 AD3d 1424, 1426 [2017]).
Lastly, "[f]ollowing an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the children and there is no presumption that any particular disposition, including the return of the children to a parent, promotes such interests" (Matter of Kayden E. [Luis E.], 111 AD3d 1094, 1098 [2013] [internal quotation marks, brackets and citations omitted], lv denied 22 NY3d 862 [2014]; see Matter of Merinda MM. [Sirena NN.], 143 AD3d 1095, 1096 [2016], lv denied 28 NY3d 910 [2016]). Based on the foregoing circumstances and the evidence presented at the dispositional hearing, we reject respondent's contention that Family Court should have issued a suspended judgment as opposed to terminating respondent's parental rights.
Notably, "the purpose of a suspended judgment is to provide a parent who has been found to have permanently neglected his or her child[ren] with a brief grace period within which to become a fit parent with whom the child[ren] can be safely reunited" (Matter of Jahvani Z. [Thomas V.—Mariah Z.], 90 NYS3d at 687 [internal quotation marks, brackets and citations omitted]; see Family Ct Act § 633). Despite the provision of numerous services, repeated reminders to engage in same, a court order requiring his cooperation and participation in such services and the passage of nearly three years from when respondent's children were removed from his care and the date of the dispositional hearing, respondent had not completed parenting education and, more importantly, had only recently engaged in mental health treatment. To that end, he continued to miss scheduled appointments with his mental health provider and had not yet progressed far enough with his treatment to even begin addressing his past behavior and/or understanding or taking responsibility for the events that led to the removal of the children from his care. Meanwhile, respondent's son was benefitting from treatment with a licensed clinical social worker and was opening up about his experiences of trauma, and the children had established a solid relationship with the foster parents [FN7]. Accordingly, giving appropriate deference to Family Court's factual findings and choice among dispositional alternatives, we find that its determination to terminate respondent's parental rights was supported by a sound and substantial basis in the record, and we discern no reason to disturb it (see Matter of Jahvani Z. [Thomas V.—Mariah Z.], 90 NYS3d at 687; Matter of Zyrrius Q. [Nicole S.], 161 AD3d at 381; Matter of Alexander Z. [Jimmy Z.], 149 AD3d at 1180; Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1006 [2017]).
Garry, P.J., Lynch, Clark and Pritzker, JJ., concur.
ORDERED that the appeal from the order entered December 15, 2017 is dismissed, without costs.
ORDERED that the order entered May 22, 2018 and the amended order entered July 2, 2018 are affirmed, without costs.



Footnotes

Footnote 1: Subsequent permanency planning reports were issued in May 2016 and November 2016, both of which continued placement of the children in foster care, noting, among other things, that, although respondent had engaged in certain services, he had yet to engage in the requisite mental health counseling.

Footnote 2: As no appeal lies from a nondispositional order in a permanent neglect proceeding, respondent's appeal from the December 15, 2017 fact-finding order must be dismissed (see Matter of Derick L. [Michael L.], 166 AD3d 1325, 1326 [2018]). Notwithstanding, respondent's appeal of the subsequently issued dispositional orders brings up for review the issues raised with respect to the fact-finding order (see Matter of Zyrrius Q. [Nicole S.], 161 AD3d 1233, 1233 n 2 [2018], lv denied 32 NY3d 903 [2018]; Matter of Duane FF. [Harley GG.], 154 AD3d 1086, 1087 n 3 [2017], lv denied 30 NY3d 908 [2018]).

Footnote 3: Notably, when respondent raised concerns over the initial parent educator to whom he was assigned, provisions were made for him to obtain services from an alternate parent educator.

Footnote 4: Even after respondent moved to a different county, his caseworker continued to attempt to get him to enroll in mental health services, to no avail.

Footnote 5: Respondent also failed to take advantage of certain community visits with the children that were offered, as he routinely failed to provide petitioner with the requisite 24-hour notice of the location and/or activity that he intended to engage in with the children and was content to default to visits with the children in petitioner's Family Resource Room.

Footnote 6: For instance, when respondent moved from Schuyler County to Steuben County, his caseworker provided the Steuben County Department of Social Services (hereinafter Steuben DSS) with respondent's contact information and, thereafter, reminded him multiple times to contact Steuben DSS to set up a meeting for the purpose of engaging in mental health treatment. Steuben DSS thereafter made numerous efforts over the course of three months to contact respondent, including telephone calls and an attempted home visit, but ultimately had to refer the matter back to petitioner due to its inability to contact him.

Footnote 7: We find no merit to respondent's contention that Family Court improperly delegated its authority to the licensed clinical social worker. Family Court's amended order of disposition makes plain that the intent of including a condition requiring consultation with the licensed clinical social worker was not to delegate its authority, but, instead, to ensure that the children were appropriately informed of the consequences of the order and the fact that visitation and contact with respondent would be ending.