Matter of Lazeria F. (Paris H.) (2021 NY Slip Op 01096)





Matter of Lazeria F. (Paris H.)


2021 NY Slip Op 01096


Decided on February 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 18, 2021

528467

[*1]In the Matter of Lazeria F. and Others, Alleged to be Abused, Severely Abused And/Or Neglected Children. Chemung County Department of Social Services, Respondent; Paris H. et al., Appellants.

Calendar Date: January 7, 2021

Before: Garry, P.J., Egan Jr., Lynch, Clark and Reynolds Fitzgerald, JJ.


Amanda FiggsGanter, Albany, for Paris H., appellant.
George J. Hoffman Jr., East Greenbush, for Kaysaun I., appellant.
M. Hyder Hussain, County Attorney, Elmira (Damian M. Sonsire of counsel), for respondent.
Donna C. Chin, New York City, attorney for the children.



Egan Jr., J.
Appeal from an order of the Family Court of Chemung County (Tarantelli, J.), entered January 24, 2019, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be abused, severely abused and/or neglected by respondents.
Respondent Paris H. (hereinafter the mother) is the mother of the five subject children — two daughters (born in 2008 and 2015), a now-deceased daughter (born in 2009; hereinafter the deceased child), and two sons (born in 2011 and 2017). Respondent Kaysaun I. (hereinafter the father) is the biological father of the younger son and the younger daughter and resided with the mother and the five children in the family home in the City of Elmira, Chemung County. On the evening of March 23, 2018, the mother and the father were the only adults present at the home and were both on the first floor of the house, while their five children were upstairs. At some point, the mother called the deceased child downstairs and repeatedly struck the deceased child about the body, causing fractures to the ulna bones in both her left and right forearms and acute contusions and abrasions to her scalp, forehead, back, buttocks, both arms and hands and both legs and feet. Following this severe beating, the deceased child returned upstairs and went to bed. The following morning, the deceased child did not come downstairs for breakfast and the older daughter and the older son thereafter discovered her unresponsive on the floor of the older son's bedroom with white foam and yellow discharge emanating from her nose and mouth. The mother called 911 and, after emergency personnel arrived, the child was pronounced dead at the scene. A subsequent autopsy revealed that the cause of death was homicide as a result of "multiple severe blunt traumatic injuries to [the deceased child's] extremities, torso and head." The other children were thereafter temporarily removed from respondents' home and placed with the maternal great-grandmother.
In April 2018, petitioner commenced this Family Ct Act article 10 proceeding, alleging that the deceased child was abused and severely abused by respondents and that the other children were derivatively abused and derivatively neglected by respondents. Prior to the fact-finding hearing, Family Court sua sponte amended the allegations of the petition (see Family Ct Act § 1051 [b]) to include an allegation that the other children were also derivatively severely abused by respondents. Following a fact-finding hearing, Family Court found that the father was legally responsible for the care of all the subject children and determined that the deceased child had been abused and severely abused by respondents and that the other children had been derivatively abused, derivatively severely abused and derivatively neglected by respondents. Following a dispositional hearing, Family Court granted custody of the children to petitioner and continued their placement [*2]with the maternal great-grandmother. Respondents each appeal from the fact-finding order.
Respondents contend that Family Court's determination finding that they abused and severely abused the deceased child and derivatively abused, derivatively severely abused and derivatively neglected the other children is not supported by a sound and substantial basis in the record. "To sustain a finding of abuse, the petitioner must demonstrate, by a preponderance of the evidence, that a parent or other legally responsible person either created or inflicted — or allowed to be created or inflicted — physical injury or substantial risk of physical injury by other than accidental means which caused or created a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ" (Matter of Allylynn YY. [Dorian A.], 184 AD3d 972, 973 [2020] [internal quotation marks, brackets and citations omitted]; see Family Ct Act §§ 1012 [e] [i], [ii]; 1046 [a] [i], [ii]). Proof of "[n]eglect or abuse of one child typically may not serve as the sole support for a finding of derivative abuse or neglect" (Matter of Ilonni I. [Benjamin K.], 119 AD3d 997, 997-998 [2014], lv denied 24 NY3d 914 [2015]); "[h]owever, evidence of the abuse of one child can suffice to establish derivative abuse or neglect when the conduct at issue evidences fundamental flaws in the respondent's understanding of the duties of parenthood so profound as to place any child in his or her care at substantial risk of harm" (Matter of Joanne II. [Thomas II.], 100 AD3d 1204, 1205 [2012] [internal quotation marks, brackets and citations omitted]; see Matter of Lillian SS. [Brian SS.], 146 AD3d 1088, 1092 n 6 [2017], lvs denied 29 NY3d 992, 919 [2017]).
A finding of severe abuse requires clear and convincing proof that "the child is an abused child as a result of reckless or intentional acts of the parent committed under circumstances evincing a depraved indifference to human life, which result in serious physical injury to the child as defined in Penal Law § 10.00 (10)" (Matter of Mason F. [Katlin G.-Louis F.], 141 AD3d 764, 765 [2016] [internal quotation marks, brackets and citations omitted], lv denied 28 NY3d 905 [2016]; see Social Services Law § 384-b [8] [a] [i]; Family Ct Act §§ 1046 [b] [ii]; 1051 [e]; Matter of Logan C. [John C.], 154 AD3d 1100, 1104 [2017], lv denied 30 NY3d 909 [2018]). Moreover, "derivative findings of severe abuse may be predicated upon the common understanding that a parent whose judgment and impulse control are so defective as to harm one child in his or her care is likely to harm others as well" (Matter of Chevy II. [Christopher II.], 180 AD3d 1180, 1182 [2020] [internal quotation marks and citations omitted]).
The evidence at the fact-finding hearing established that, on the evening of March 23, 2018, the deceased child had eaten macaroni and cheese [*3]for dinner, had taken a bath and was upstairs with her four siblings before bedtime. The mother and the father were both downstairs and, at some point, the mother called the deceased child downstairs. The older daughter (who was nine years old at the time) and the older son (who was six years old at the time) indicated that the mother was angry at the deceased child because she had, among other things, clogged the bathtub during her bath.[FN1] Although neither child personally observed the incident that followed, from the common play area at the top of the stairs the older son overheard the mother yelling at the deceased child. He recounted hearing approximately 20 slapping or clapping sounds — which he demonstrated by striking himself on the arm — and indicated that the deceased child was screaming, yelling "mommy, I'm sorry." After the incident ended, the deceased child returned upstairs, crying, with her arms outstretched, complaining of pain in her hands, arms and stomach and did not want anyone to touch her. She went to bed shortly thereafter.
The following morning, the older daughter and the older son discovered the deceased child on the floor of the older son's bedroom, unresponsive, with "white blood" coming out of her nose. A 911 call was placed at approximately 10:51 a.m.; responding emergency personnel were unable to revive the deceased child and the coroner declared her dead at 12:20 p.m., noting that she had been dead for several hours. James Terzian, a forensic pathologist, performed an autopsy and documented numerous injuries on multiple parts of the deceased child's body, including numerous bruises and abrasions on her forehead, scalp, face, back, buttocks, arms and legs, displaced fractures of the ulna bone in both her left and right forearms — indicative of defensive wounds — and cerebral edema of the brain.[FN2] According to Terzian, the severe force used to inflict these blunt traumatic injuries caused "multiple deep hemorrhages" in the muscle tissue of the deceased child's left arm and hand, lower extremities, both legs, back and buttocks, leading to rhabdomyolysis, or a breakdown of the underlying muscle tissue. As a result of this breakdown, myoglobin was released into the deceased child's bloodstream, which caused acute renal failure and ultimately death. Upon examination, none of the injuries that Terzian documented showed any inflammatory response or signs of healing, indicating that she had died within six hours of when the injuries were inflicted. Terzian ruled out the possibility that these injuries could have been caused by the children playing "hot peas and butter," a tag-like game where children strike each other with a pool noodle and/or belt. Jeffrey Hubbard, a forensic and pediatric pathologist who testified on the mother's behalf, concurred with Terzian's conclusions and confirmed that the deceased child's death was caused by "complications of blunt force trauma injuries." Terzian opined that the subject [*4]injuries would have been "extremely painful," the deceased child's arms would have been rendered "non-usable" and, without medical treatment, she would have lived for only "a few hours at most" after the injuries were inflicted.
Initially, with respect to Family Court's determination that the father severely abused the deceased child and derivatively severely abused the older daughter and the older son, we are reluctantly constrained to reverse said findings. As this Court has previously made clear, and as petitioner and the attorney for the child concede, unlike findings of abuse and neglect, which may be made against "any parent or other person legally responsible for a child's care" (Family Ct Act § 1012 [a] [emphasis added]), the current statutory language contained in Social Services Law § 384-b (8) (a) (i) only permits a finding of severe abuse to be made against a child's "parent" (see Matter of Brett DD. [Kevin DD.], 127 AD3d 1306, 1307-1308 [2015], lv denied 25 NY3d 908 [2015]; Matter of Tiarra D. [Philip C.], 124 AD3d 973, 975 [2015]). Although we are satisfied that the evidence at the fact-finding hearing demonstrates, by clear and convincing evidence, that the father's failure to intervene to stop the brutal beating of the deceased child or thereafter take any action to provide her with life-saving medical care would otherwise satisfy the elements of severe abuse as against her (see e.g. Matter of Logan C. [John C.], 154 AD3d at 1104-1105) and, consequently, derivative severe abuse as against the older daughter and the older son (see e.g. Matter of Mason F. [Katlin G.-Louis F.], 141 AD3d at 768), because he is not the biological father of these children, Family Court was statutorily precluded from rendering such findings and we, therefore, are constrained to reverse same (see Matter of Kaylene H. [Brenda P.H.], 133 AD3d 477, 478 [2015]; Matter of Makaya H. [Jorge J.], 125 AD3d 1263, 1264-1265 [2015], lv denied 25 NY3d 909 [2015]; Matter of Tiarra D. [Philip C.], 124 AD3d at 975; Matter of Leonardo V., Jr. [Leonardo V.], 95 AD3d 1343, 1345 [2012]).[FN3]
With regard to the remaining allegations against respondents, a sound and substantial basis in the record exists to support Family Court's findings. There is no question that, in the 24 hours prior to the deceased child's death, respondents were the only two adults legally responsible for the children's care that were at the family home.[FN4] Given the unrebutted medical evidence with respect to the deceased child's cause of death, the severity of the injuries sustained and the clear need for medical treatment that would have been attendant thereto, coupled with the older son's observations regarding overhearing the mother inflict this brutal beating upon the deceased child and the mother's implausible explanation to the police as to how these injuries could have otherwise occurred, we conclude that there was clear and convincing evidence in the record establishing that the mother acted with [*5]an utter disregard for human life when she brutally beat the deceased child, supporting Family Court's finding of severe abuse against her (see Matter of Dashawn W. [Antoine N.], 21 NY3d 36, 48-49 [2013]; Matter of Kayden E. [Luis E.], 88 AD3d 1205, 1206-1207 [2011], lv denied 18 NY3d 803 [2012]). Additionally, inasmuch as the subject beating occurred while the father was present in the downstairs of the home, at a time when the mother's yelling and the daughter's screaming could be heard throughout the house, we are satisfied that the father's conduct in failing to intervene or subsequently render medical aid evinced "such an impaired level of parental judgment as to create a substantial risk of harm for any child in [his] care," namely, the younger daughter and the younger son — his biological children — who were both present at the home when the beating occurred (Matter of Loraida R. [Lori S.], 97 AD3d 925, 927 [2012] [internal quotation marks and citations omitted]). Accordingly, we discern no reason to disturb Family Court's finding that the father derivatively severely abused the younger daughter and the younger son (see Matter of Marino S., 100 NY2d 361, 374 [2003], cert denied 540 US 1059 [2003]; Matter of Chevy II. [Christopher II.], 180 AD3d at 1181-1182). Further, based on the foregoing, we find that Family Court's findings that respondents abused the deceased child and derivatively abused and neglected the four surviving children are supported by a preponderance of the evidence (see Family Ct Act §§ 1012 [e] [i], [ii]; 1046 [b] [ii]; 1051 [e]).
Garry, P.J., Lynch, Clark and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as adjudicated the deceased child to be severely abused by Kaysaun I. and adjudicated the older daughter and the older son to be derivatively severely abused by Kaysaun I.; petition dismissed to that extent; and, as so modified, affirmed.



Footnotes

Footnote 1: Although neither the older daughter nor the older son testified at the fact-finding hearing, they each participated in forensic interviews with a supervisor for Chemung County Children and Family Services in the days following the incident.

Footnote 2: In his forensic interview, the older son drew a picture of the deceased child, indicating the various places that he observed injuries on her body, which drawing accurately corresponded with Terzian's autopsy findings.

Footnote 3: We discern no public policy that would countenance against Family Court having the ability to render a finding of severe abuse or derivative severe abuse under circumstances like these and would urge the Legislature to expeditiously amend Social Services Law § 384-b (8) to address the concerns raised herein (see e.g. Matter of Tiarra D. [Philip C.], 124 AD3d at 975).

Footnote 4: Although the father is only the biological father of the younger daughter and the younger son, he lived with and had been in a relationship with the mother for approximately five years and, in his statement to police, referred to the all of the children in the home as "[o]ur kids." Moreover, the older daughter and the older son refer to him as "dad" and there is no dispute that he was a person responsible for the subject children's care at all relevant times (see Family Ct Act § 1012 [g]).