Matter of N'Thai N. (Mali N.) (2025 NY Slip Op 05723)

Matter of N'Thai N. (Mali N.)

2025 NY Slip Op 05723

Decided on October 16, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 16, 2025

CV-23-0082
[*1]In the Matter of N'Thai N. and Others, Alleged to be Neglected Children. Albany County Department of Children, Youth and Families, Respondent; Mali N., Appellant. (Proceeding No. 1.) (And Two Other Related Proceedings.)
In the Matter of N'Thai N. and Others, Alleged to be Abused Children. Albany County Department of Children, Youth and Families, Respondent; Mali N., Appellant. (Proceeding No. 4.) (And Two Other Related Proceedings.)

Calendar Date:September 11, 2025

Before:Clark, J.P., Pritzker, Reynolds Fitzgerald and McShan, JJ.

Matthew C. Hug, Albany, for appellant.
Eugenia Koutelis Condon, County Attorney, Albany (Daniel C. McGinn of counsel), for respondent.
Pamela J. Joern, East Chatham, attorney for the children.
Veronica Reed, Schenectady, attorney for the children.

Pritzker, J.
Appeal from an order of the Family Court of Albany County (Amy Joyce, J.), entered February 9, 2022, which granted petitioner's applications, in six proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be abused and neglected.
Respondent is the father of two children (born in 2006 and 2009). In 2018, respondent lived in a house in Schenectady County with his two children, his mother (hereinafter the grandmother), his brother (hereinafter the brother), the brother's three children, his paramour and her two children and his stepchild, of whom he had custody (eight children altogether). On April 6, 2018, one of the brother's children (born in 2003, hereinafter the deceased child) who was severely autistic, nonverbal and required intense supervision due to his tendency to ingest nonfood items, was left unattended while respondent was in the home. The deceased child found a bag of loose oxycodone pills, ingested the pills as well as part of the bag, overdosed on the medication and died. Thereafter, the grandmother and the brother were held criminally responsible for the deceased child's death. Alongside the police investigation into the deceased child's death, the Schenectady County Department of Social Services (hereinafter SCDSS) also began an investigation and filed abuse petitions against respondent, the brother and the grandmother, which were later withdrawn once an investigation in Albany County was commenced.
Respondent then moved into another home in Albany County with his two children, the paramour and her two children and two children of the brother. As a result of an initial investigation by the State Police into respondent's suspected drug dealing, they executed a search warrant on the Albany County home on January 31, 2019. The children were present in the house when this occurred. Police found a locked lockbox in one of the children's rooms that contained, among other things, heroin and crack cocaine. Respondent was arrested, charged with various drug offenses and endangering the welfare of a child and subsequently pleaded guilty to attempted criminal possession of a controlled substance in the third degree.
In connection with the 2019 arrest of respondent, respondent's two children and the two children of the brother were removed from the home and placed in petitioner's custody. In February 2019, petitioner filed three neglect petitions against respondent alleging that he failed to maintain a safe and clean home for the six children in the home due to, among other things, the presence of drugs as well as the lack of cleanliness in the home. Four months later, petitioner filed three abuse petitions alleging that respondent abused the deceased child and derivatively abused the other seven children who were in the home the day that the deceased child died. The petition also alleged that respondent was legally responsible for all eight of the children, that he knew or should have known about the rampant [*2]drug use by adults in the Schenectady County home and that respondent failed to take the necessary steps as a reasonably prudent parent to protect all of the children from the hazardous and unsecured drugs that killed the deceased child.
Family Court heard testimony on these petitions at a three-day fact-finding hearing and subsequently found that respondent neglected his two children, the brother's two children and the paramour's two children based upon the events of January 31, 2019, when the search warrant was executed and drugs were found in the home. Petitioner alleged that these events placed the children in imminent risk of harm and thus demonstrated that respondent failed to exercise a minimal degree of care. The court further found that respondent abused the deceased child and derivatively abused respondent's two children, his stepchild, the brother's two children and the paramour's two children. The court explained that petitioner sufficiently demonstrated a prima facie case of abuse by presenting evidence that the deceased child had significant developmental and physical limitations, needed help with basic hygiene tasks and had a propensity to ingest nonfood items, and, despite knowing this, respondent left the child unattended in a home where he knew or should have known that the brother left unsecured narcotics, which the child overdosed on. The court then explained that respondent failed to rebut this evidence of culpability because, although respondent claimed he did not know the brother was using narcotics or that the deceased child was left unattended, the court stated that as a person legally responsible for the child, it was his duty to know the child's whereabouts given his needs and the tendencies toward drug use in the home by the other adults and a reasonably prudent person would have acted differently under the circumstances. The court further found that respondent also exposed the remaining children to the conditions that led to the deceased child's death and, in doing so, respondent evinced a fundamentally flawed understanding of his responsibilities as a parent that placed the children at a substantial risk of harm, such that respondent derivatively abused these children. Respondent appeals.
We turn first to respondent's assertion that Family Court's findings of abuse and derivative abuse are not supported by a sound and substantial basis in the record. As relevant here, "[t]o sustain a finding of abuse, the petitioner must demonstrate, by a preponderance of the evidence, that a parent or other legally responsible person either created or inflicted — or allowed to be created or inflicted — physical injury or substantial risk of physical injury by other than accidental means which caused or created a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ" (Matter of Lazeria F. [Paris [*3]H.], 193 AD3d 145, 148 [3d Dept 2021] [internal quotation marks and citations omitted]). "Proof of injuries to a child that would ordinarily not occur absent an act or omission of the respondent, along with evidence that the respondent was the caretaker of the child at the time of the injury, shall be prima facie evidence of abuse . . . , thereby shifting the burden to the respondent to rebut the presumption of culpability by offering a reasonable and adequate explanation for how the child sustained the injury" (Matter of Allylynn YY. [Dorian A.], 184 AD3d 972, 973 [3d Dept 2020] [internal quotation marks, brackets and citations omitted]; see Matter of Miranda HH. [Thomas HH.], 80 AD3d 896, 897 [3d Dept 2011]). Although proof that one child has been abused may not typically serve as the sole basis for finding derivative abuse of other children, it may do so "when the conduct at issue evidences fundamental flaws in the respondent's understanding of the duties of parenthood so profound as to place any child in his or her care at substantial risk of harm" (Matter of Joanne II. [Thomas II.], 100 AD3d 1204, 1205 [3d Dept 2012] [internal quotation marks, brackets and citations omitted]).
Testimony at the fact-finding hearing established that the deceased child, who was 14 years old at the time of his death, was severely autistic, almost completely nonverbal and had a tendency to put nonfood objects in his mouth if not closely supervised. Testimony demonstrated that respondent gave the deceased child his medication, changed his diapers, fed him and even, at one point, expressed concern over some of the medications prescribed to the deceased child. The evidence at the fact-finding hearing also demonstrated that, not only was respondent responsible for the deceased child, he was also responsible for the other seven children in the Schenectady home, along with the brother, the grandmother and the paramour, the other adults who were in the home. Testimony also established that, prior to the deceased child's death, the brother and the brother's girlfriend had their children removed from their custody due to significant drug use. In fact, it was due to this that respondent had custody of two of the brother's children the day the deceased child died.[FN1] Interviews conducted by SCDSS's supervisor of respondent's neighbors revealed that respondent, the brother and the brother's girlfriend had been dealing drugs out of the house for years.
The morning of his death, the deceased child had been brought home by a family friend, at whose residence the deceased child had slept the night before. During the supervisor's investigation, she spoke with one of the brother's children who stated that, the day the deceased child died, one of the other children found pills on the floor, picked them up and put them in the futon where the deceased child regularly sat and slept. Later that day, the paramour took all of the children in the home, with the exception of the deceased child [*4]and respondent's stepchild, to McDonald's. While the paramour and the children were at McDonald's, respondent, the brother and the grandmother were home with the deceased child and respondent's stepchild. Testimony demonstrated that respondent was aware that the deceased child had been dropped off that morning, but that he did not see the deceased child again until the grandmother, who found the deceased child, was screaming for help. Respondent administered CPR to the deceased child until emergency responders arrived. The deceased child was declared dead soon after arriving at the hospital. An autopsy revealed that, among other things, the deceased child had ingested a water bottle label and a corner of a plastic bag. The autopsy report concluded that the cause of death was "[a]cute oxycodone intoxication." Given the foregoing evidence, we agree with Family Court's determination that petitioner met its prima facie burden of establishing that, given respondent's position as a caretaker of the deceased child, he would not have ingested a lethal dose of narcotics if respondent had been carefully supervising him or ensuring the deceased child lived in a reasonably safe environment, especially in light of his significant developmental and physical limitations (see Matter of Logan C. [John C.], 154 AD3d 1100, 1104 [3d Dept 2017], lv denied 30 NY3d 909 [2018]; Matter of Avery KK. [Nicholas KK.], 144 AD3d 1429, 1430-1431 [3d Dept 2016]).[FN2] Respondent, who did not testify, did not rebut the presumption as to his culpability for the deceased child's death (see Matter of Philip M., 82 NY2d 238, 246-247 [1993]; Matter of Tanajhia A., 283 AD2d 708, 709 [3d Dept 2001]; compare Matter of Jaiden T.G. [Shavonna D.-F.], 89 AD3d 1021, 1022 [2d Dept 2011]). Furthermore, respondent's abuse of the deceased child supports Family Court's determination that he derivatively abused the other seven children as it "demonstrated a fundamental defect in [respondent's] understanding of the duties of a person with legal responsibility for the care of children and such an impaired level of judgment as to create a substantial risk of harm for any child in his care" (Matter of Jaretzy F. [Jesus F.-F.], 240 AD3d 892, 894 [2d Dept 2025] [internal quotation marks, ellipsis and citation omitted]; see Matter of Chance F. [Roy F.], 238 AD3d 1037, 1038 [2d Dept 2025]; Matter of Jahkell SS. [Victoria SS.], 237 AD3d 1416, 1419-1420 [3d Dept 2025]).
Respondent also contends that Family Court's determination that he neglected his children, the brother's two children and the paramour's children relative to the 2019 search in Albany County lacks a sound and substantial basis in the record. "Neglect is established when a preponderance of the evidence shows that the children's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and that the actual or threatened harm to the children results from the parent's failure to exercise a minimum degree of [*5]care in providing the children with proper supervision or guardianship" (Matter of Sariyah T. [Deidre R.], 238 AD3d 1253, 1254 [3d Dept 2025] [internal quotation marks and citations omitted]). "A finding of neglect requires only an imminent threat of injury or impairment, not actual injury or impairment, and such threat may be established through a single incident or circumstance" (Matter of Jahkell SS. [Victoria SS.], 237 AD3d at 1417 [internal quotation marks, emphasis and citations omitted]). "When determining whether a parent or guardian has failed to exercise a minimum degree of care, the relevant inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (Matter of Messiah RR. [Christina RR.], 190 AD3d 1055, 1057 [3d Dept 2021] [internal quotation marks and citations omitted]).
During fact-finding, evidence established that, after conducting two controlled drug buys from defendant, police followed him back to his Albany County residence and, shortly after, executed a search warrant. During the search, a locked lockbox was found in one child's bedroom, which police opened with a screwdriver. Inside the box, police found heroin, red glassine envelopes, a prescription bottle, 16 grams of crack cocaine, various forms of Xanax, as well as identification belonging to the brother. In the main bedroom, police found the same glassine envelopes filled with a powdery substance in the pocket of a men's pair of jeans. Respondent was the only adult in the home who was arrested on various charges, including endangering the welfare of a child. Ultimately, defendant pleaded guilty to attempted criminal possession of a controlled substance in the third degree.
Family Court found that respondent neglected his two children, the brother's two children and the paramour's two children based upon the 5:00 am execution of the search warrant, which was not only "undoubtedly terrifying" for the children but also revealed drugs and drug paraphernalia in a locked box kept in a child's room. Although protected with a code, testimony demonstrated that it was easily opened with a commonly accessible household item. Additionally, the search also revealed that other drugs and drug paraphernalia were kept unsecured in the home. Respondent argues that the police executing a search warrant that terrified the adults and children in the home should not be a basis for finding that respondent neglected the children. This, however, ignores that the police were at the home executing the search warrant based upon respondent's behavior in conducting drug sales. Also, several witnesses testified that they had significant concerns about the children's safety and welfare given the notorious history of drug abuse among the adults living with respondent and those who were involved in the children's lives. Accordingly, Family Court's finding that respondent created an imminent threat of harm to the children and in doing so failed to [*6]exercise minimal care in keeping dangerous and illegal drug activity away from the subject children is supported by sound and substantial evidence (see Matter of Essleiny A. [Rafael A.], 142 AD3d 862, 862-863 [1st Dept 2016], lv denied 28 NY3d 911 [2016]; Matter of Diamonte O. [Tiffany R.], 116 AD3d 866, 867 [2d Dept 2014]; see also Matter of Paige AA. [Anthony AA.], 85 AD3d 1213, 1216-1217 [3d Dept 2011], lv denied 17 NY3d 708 [2011]).
Finally, the attorney for the child (hereinafter AFC) who represents the paramour's two children asserts that Family Court lacked subject matter jurisdiction for the abuse petition. The AFC for respondent's two children and the two children of the brother joins in this argument. However, upon reviewing these arguments, it is clear that despite labelling the challenge as one regarding subject matter jurisdiction, the AFCs' arguments relate to whether venue was proper in Albany County Family Court rather than Schenectady County. Unlike subject matter jurisdiction, which is not waivable (see Matter of Nemes v Tutino, 173 AD3d 16, 23 [4th Dept 2019]; see also Matter of Consford v Consford, 271 AD2d 106, 110 [3d Dept 2000]), because venue was not challenged in Family Court, any such argument has been waived (see generally Matter of Sean W. [Brittany W.], 87 AD3d 1318, 1320 [4th Dept 2011], lv denied 18 NY3d 802 [2011]; Matter of Brayanna G., 66 AD3d 1375, 1376 [4th Dept 2009], lv denied 13 NY3d 714 [2010]).
Clark, J.P., Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: When the brother's two children were originally removed from the brother's care, they were placed with the grandmother. The grandmother then overdosed, at which time physical custody went to respondent.

Footnote 2: To the extent that respondent argues that the deceased child's death was an "accident" and thus it cannot substantiate allegations of abuse as per the language of Family Ct Act § 1012 (e) (i), the child's inadvertent ingestion of dangerous narcotics left unsecured by the adults in the home certainly cannot be the kind of accident contemplated by the statute.